SERAPHINE HOVEY v. MICIAH WALKER.

*Lease—Rights of landlord's grantee—Assignment of rent—Repairs by tenant.*

1. A lessor conveyed his interest in the leased premises, and gave an order on the lessee for the payment to the grantee of all rents and moneys in his hands due the lessor. At the time of making the lease it was agreed that the lessee should pay the lessor a certain sum of money, and should pay certain of his debts, and that the payments so made should apply on the rent account. And it is held that the grantee received the deed and order subject to this agreement, whether aware of its existence or not, and that payments made thereunder by the lessee were properly chargeable against the rent account.

2. A tenant who holds under a lease which makes it his duty to keep the premises in good repair, and, at the end of the term, deliver the same in like condition as when received, "reasonable use and wear thereof and damage by the elements excepted," in order to be entitled to credit for repairs, must show that the repairs were made necessary by the reasonable use and wear of the premises, or by damage from the elements.

Error to St. Clair. (Canfield, J.) Submitted on briefs March 2, 1892. Decided March 11, 1892.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*Avery Bros.* and *E. W. Harris,* for appellant, contended:

1. No rule is better settled than that the assignee of a chose in action takes it subject to all equities existing between the debtor and creditor; citing *Warner v. Whittaker,* 6 Mich. 136.

*Cyrus A. Hovey* (*Samuel W. Vance,* of counsel), for plaintiff, contended:

1. The record shows that on the 26th of March, 1884, Fitch made a lease of the Fenton Iron-Works to Walker, under which lease Walker was to take possession April 1, 1884; that on said 26th day of March, 1884, Walker claims to have advanced about $500 to Fitch, and claims that at the same time Fitch, who owed various creditors, instructed Walker to pay these creditors as their debts became due, and charge such payment against him (Fitch); that the creditors, so far as the record shows, had no knowledge of these instructions, and were not notified thereof. The debts were not charged to Fitch on Walker's books. Walker did not assume their payment as a personal debt from himself to the creditors, and the debts were not charged up against Fitch until they had been paid. Long before these debts were paid, and six days after his original instructions to Walker, Fitch radically changed these instructions by making to his wife a deed of the Fenton Iron-Works and all property on the premises, and also assigned to her all rents and moneys in Walker's hands due to Fitch, which assignment was evidenced by the written order, and, before Walker had paid these debts, he received from Mrs. Fitch-Hovey notice of the assignment, and yet, after receiving that notice, went on and paid the debts, and now seeks to charge these subsequently paid debts as against Mrs. Fitch-Hovey.

2. An assignment of an account conveys the balance due at the time the debtor has notice of the assignment, and he cannot diminish that balance by any claim accruing or procured subsequently. The assignee receives it subject to all equities then existing between the assignor and the debtor, but it is liable to no other burden; citing *Bartlett v. Pearson,* 29 Me. 15; *Brashear v. West,* 7 Peters, 615, 619; *Conant v. Bank,* 1 Ohio St. 308; and, when

the debtor knows of the assignment in time to save himself, he must do so, or suffer the loss; citing *Smith v. Blatchford*, 2 Ind. 184; *Walters v. Ins. Co.*, 1 Iowa, 404; and if a person purchases land, and there is an outstanding mortgage unrecorded, of which the purchaser had no knowledge at the time of his purchase, he is bound by notice given him of such outstanding mortgage before he pays the balance of the purchase price. If he makes payment after such notice, it is in his own wrong, and he must be the loser; citing *Warner v. Whittaker*, 6 Mich. 133.

3. Walker had no personal interest in the payment of these debts. The creditors were never notified of these instructions. They were not parties to the arrangement. Fitch was not released, consequently there could be no contract of novation; citing 1 Pars. Cont. 217.

MORSE, C. J. March 26, 1884, one Willis J. Fitch, then the husband of plaintiff, leased a foundry and machine-shop owned by him, and known as the "Fenton Iron-Works," to the defendant for one year from the 1st day of April, 1884, with the option of another year. The rental was $2,000 per year. Fitch and the plaintiff were at the time having domestic troubles, which afterwards ended in a divorce, and plaintiff married again. Soon after executing this lease Fitch went away, and before leaving conveyed his interest in the premises to his wife, the plaintiff, by deed. The deed stated that its intention was to convey to plaintiff all the right, title, and interest of Fitch in and to the Fenton Iron-Works and foundry, and all his interest in the tools and fixtures therein. This deed was dated March 27, 1884. On April 1, 1884, Fitch gave his wife the following order:

"FENTON, MICH., Apr. 1, 1884.
" M. WALKER:
"Please pay to my wife, Seraphine Fitch, all rents and moneys in your hands due to me, at any time she may ask for them, and oblige.
"Respectfully,
"W. J. FITCH."

90 MICH.—34.

November 1, 1884, the plaintiff sold the premises to Julia E. Snyder, mother of Fitch, who held a $5,000 mortgage upon the premises, reserving the rent up to April 1, 1886. It is conceded that Walker occupied the premises for two years under the plaintiff. This suit grows out of such tenancy, and the transactions connected therewith.

1. As to the rent, plaintiff claims that defendant occupied the premises both years at the rate of $2,000 per year. Walker testified that, before the end of the first year, he informed the plaintiff that he could pay but $1,000, and that it was talked over, understood, and agreed between them that the rent for the year commencing April 1, 1885, was to be that sum. Plaintiff claimed that defendant never intimated anything of the kind to her until he had been in possession of the premises for several days after the close of the first year, and that he then said to her that he could not afford to pay over $1,000 for the second year, but that she never agreed or assented to any reduction in the rent. The defendant admitted on the trial that plaintiff was entitled to a judgment of $493.58. The jury found the amount of defendant's indebtedness, June 11, 1890, to be $1,642.05.

It is assigned as error that the court instructed the jury that, to render any agreement between the parties binding, it must have been made during the first year. The difference between the parties as to the amount of rent to be paid the second year was clearly defined by the testimony. According to the defendant's showing, the contract to reduce the rent to $1,000 was made before the end of the first year, and under plaintiff's testimony there was never any contract of reduction made. There was no room in the case for any other theories

than those disclosed by the testimony of the parties. Without determining whether the same was reversible error, it is clear that the circuit judge went outside of the evidence when he instructed the jury in relation to any agreement made to reduce the rent after the second year had commenced, as there was no claim by either party, or any evidence tending to show, that any such agreement was made after the close of the first year's tenancy.

2. The lease from Fitch to defendant covered also the machinery, fixtures, tools, implements, moulds, and all articles pertaining to the running of the business, and also a dwelling-house connected with the premises. It is also provided—

" For said first party [Fitch] to sell all stock now on hand at net cost to him, the said second party [defendant], and to take a similar stock on same terms at expiration of this lease, if desired."

The plaintiff, under this provision, claimed to recover for the value of the stock turned over to defendant by Fitch, inventoried when defendant took possession, and found to amount to $871.48. Defendant claimed that he had an agreement with Fitch by which he was to furnish him $500 in money, and pay all his outstanding indebtedness pertaining to the foundry, and that the same was to be deducted from the rent. Defendant did not tender back this stock at the end of the second year, but claimed upon the trial that he had paid under this arrangement $1,226.31 for Fitch. From this amount he deducted the value of the stock, and charged the balance against plaintiff upon the rent.

The court should have instructed the jury in this respect as requested, to wit:

"It is claimed on the part of the defendant that, in

the original arrangement with Willis Fitch, it was agreed that the defendant should pay the outstanding indebtedness of Fitch, and apply the same on the account of rent.    It also appears in proof that a large amount of payments were made to various parties who were creditors of Fitch.    The plaintiff claims that under the assignment to the plaintiff in this cause no such payment would be binding upon her, and I direct you that, if it be a fact that these debts were paid to these creditors as a result of an arrangement with Mr. Fitch at the time of the original agreement between Mr. Fitch and Mr. Walker, they were binding on the plaintiff, and are a correct charge against the account of rent of these premises."

All the plaintiff received by her deed was the right, title, and interest of Fitch in this stock, and her order for the rent only demanded what was due to Fitch.    It did not matter whether plaintiff knew of this agreement between Fitch and defendant, and the court was in error in instructing the jury that plaintiff's knowledge and consent to this agreement was necessary.    She received her deed and her order after this agreement was made, and she took the personal property and the rent subject to it.

There was also a controversy about repairs, the rent of the house which plaintiff occupied, and other matters. In relation to the repairs, there was no error in the charge of the court, as there was no testimony tending to show that any of the repairs made by Walker, and for which he asked credit, were occasioned by the reasonable use and wear of the premises or by damage of the elements.    Under the lease, it was his duty to keep the premises in good repair, and, at the end of his term, to deliver the same in like condition as when received, "reasonable use and wear thereof and damage by the elements excepted."

We find no other errors in the charge.    The assign-

ments of error relate solely to the instructions of the court to the jury.

The judgment is reversed and a new trial granted, with costs of this Court to defendant.

The other Justices concurred.