### BELDEN v. UNION WAREHOUSE CO.

(Supreme Court, Appellate Division, Second Department. December 30, 1896.)

1. COVENANTS—RUNNING WITH LAND.
   A covenant, in a lease of a storehouse, that the lessor and lessee will pay each other for any shortage or overrun in the grain stored therein, binds an assignee of the lessor, as the right and liability thereunder arise from the use of the demised property.

2. SAME—CONSTRUCTION.
   A provision that such a covenant shall apply "only to the shortage or overrun ascertained during the term" of the lease does not mean that there is to be a single shortage or overrun ascertained when the lease expires, but applies to a shortage discovered during its continuance.

3. LANDLORD AND TENANT—AMOUNT DUE UNDER LEASE.
   Where a lease of a storehouse provides that the parties will reimburse each other for shortages and overruns in the grain stored therein, the rent account is a running one, and the only claim against the lessee which passes to a receiver of the lessor is to the balance due after allowing any proper offset.

Appeal from special term, Kings county.

Action by Alfred G. Belden against the Union Warehouse Company. William W. Goodrich was appointed receiver of defendant, and under order of court assigned all the leases of defendant to the Brooklyn Wharf & Warehouse Company. There being a dispute about the amount to be paid to the receiver, he moved for an order compelling the Brooklyn Company to pay the amount claimed by him. The motion was denied, and the receiver appeals. Affirmed.

Argued before BROWN, P. J., and CULLEN, HATCH, and BRADLEY, JJ.

John A. Deady, for appellant.
John M. Bowers, for respondent.

CULLEN, J. In this action the appellant was appointed receiver of the defendant, a corporation which was or had been in the business of storing and elevating grain. The defendant held, under leases, various warehouses in the city of Brooklyn, and adjacent

pieces of pier or wharf property. Among these was the property known as "Watson Stores." In July, 1893, it sublet this property to the Atlantic Storage Company for the term of four years from May 1, 1893. The rent stipulated in the lease was 7 per cent. of the net earnings of the lessee corporation. The demised premises were taken by the lessee with grain stored in them, the lessee assigning the contracts of the storage made by the lessor. The lessee agreed to take the amount of grain shown on the books of the lessor as the true quantity in store. The lessor agreed to pay for any shortages in quantity, either in the grain on store at the time of the lease, or in grain subsequently stored during the demised term. The provisions of the lease in these respects are as follows:

"It is further mutually covenanted and agreed between the parties of the first and second parts that the quantity of grain in store on the demised premises upon the execution of this lease shall be taken at the amount shown by the books of the party of the first part, and that on the last day of the term, or other sooner termination of this lease, as herein provided, the quantity of grain then in store shall be taken at the amount then shown to be in store by the books of the party of the second part. The party of the first part covenants and agrees to and with the party of the second part to bear and pay to the party of the second part all shortages that may occur or arise in the quantity of grain in the premises hereby demised, either at the time of the execution of this lease, or in that placed upon or stored in said demised premises by the party of the second part during the continuance of the term hereby demised; and the party of the second part agrees to pay to the party of the first part any and all overruns in the quantity of grain stored in the demised premises at the time of the execution of this lease, or in the quantity of grain that may be placed upon or stored in the demised premises during the continuance of the term,—such allowance or payment for shortage or overrun to be made and paid within ten days after the same shall have been determined, and shall apply only to the shortage or overrun ascertained during the term of this lease."

By authority of the court the receiver entered into an agreement with the Brooklyn Wharf & Warehouse Company whereby he assigned to said company all the leases held by the defendant company and subleases executed by it, and all claims for accruing rent for storage, labor, and wharfage, for their full value (except a deduction on claims for labor). A statement of the rentals and charges was to be prepared by the receiver, and the true value ascertained and determined by him and by one Dows, who was to act on the part of the purchaser. The sum of $100,000 was paid the receiver on delivery of the assignment. When the true amount of the charges should be ascertained, if the amount exceeded the sum paid, the excess was to be paid by the purchaser; if it did not equal that sum, the deficiency was to be repaid by the receiver. The purchaser was to assume all obligations of the leases and all contracts made by the defendant company or by the receiver, and to indemnify the receiver from all liability on account of the same. On the adjustment of the accounts a dispute arose between the parties, which, on this appeal, is narrowed down to the question whether the purchaser should be allowed for the following item: The accrued rent from the Watson stores was nominally $19,537.85. An examination was made of the grain in store, and the grain weighed. It then ap-

peared that there was a shortage which would amount in money to
$7,671.90. The purchaser claims that this sum should be deducted
from the apparent amount of the accrued rent. This the appellant
disputes. The special term decided the question in favor of the
purchaser.

The claim of the appellant is that, under the lease to the Atlantic
Company, the covenant to pay for shortages was only the personal
covenant of the lessor; that, properly construed, it was to pay only
a single allowance for shortage to be ascertained at the termina-
tion of the lease, and that no claim against the lessor could arise
until that time; that hence it was not a proper set-off against the
receiver's claim for rent; and that the purchaser neither assumed
nor incurred any liability for the shortage. We are of opinion that
the covenant is not personal, but binds the assignee of the reversion.
By the terms of the lease the covenants were to bind the successors
and assigns of the parties. But though such was the intent of the
parties, that intent would be inoperative unless the covenant con-
cerned the thing demised. 1 Woodf. Landl. & Ten. 162. A cove-
nant to purchase the improvements made by a tenant on the demised
premises runs with the land. Coffin v. Talman, 8 N. Y. 465; Lametti
v. Anderson, 6 Cow. 307. But a covenant to purchase chattels from
the lessee would not. Therefore, if the covenant to pay for short-
age is to be construed as a covenant to pay for chattels, the cove-
nant would be only personal. But such, we think, is not its true
construction. The lease is very peculiar in its terms. The rent
stipulated was not a fixed sum, but a certain proportion of the net
earnings of the defendant's business. If the lessor should pay the
lessee for the shortage, it was not thereby to acquire any property.
The lease contemplated that in the use of the premises as a ware-
house the grain might either run short or there might be a surplus.
The loss or gain from this cause was to fall upon or inure to the
lessor. It was an agreement that, practically, the rent should be
increased or diminished by the surplus or shortage, as the case might
be, which should occur in the operations of the warehouse. If not
technically rent, both the liability and the right sprang from the en-
joyment and use of the demised premises, and we think it so con-
cerned the thing demised as to run with the land. If this view is
correct, then the purchaser from the receiver would be responsible
to the tenant to the amount of the shortage. It is further to be ob-
served that, by the assignment from the receiver to the purchaser,
the latter agreed to comply with all the covenants of the subleases,
including that of the Watson stores.

Nor do we think that, under the lease, there was to be but a sin-
gle shortage ascertained at the end of the lease. The provision that
the covenant "shall apply only to the shortage or overrun ascer-
tained during the term of the lease" does not imply such an intent.
It prescribes when the shortages or overruns must be ascertained;
that is, during the term of the lease, and not thereafter. In this
case the shortage has been ascertained, and therefore, under the
lease, its amount was payable within 10 days; hence it would be a

good set-off against the accruing rent, which would become due on the 1st of May thereafter.

. We also agree with the court at special term that the claim of the receiver against the Atlantic Storage Company was on a running account, and that all that passed to the receiver was the net balance after allowing any set-off of the lessee. If we are correct, either in the view that the covenant would bind the purchaser or that the shortage was a good set-off to the rent, it follows that the decision of the special term was correct.

The order appealed from should be affirmed, with $10 costs and disbursements. All concur.