## PLAZA INVESTMENT COMPANY *v.* ABEL.

1. LANDLORD AND TENANT—ASSIGNMENT—LIABILITY OF GRANTEE—REPAIRS.

    The liability of the landlord's grantee to tenant for damages for breach of covenant to keep premises in repair must arise from the grantee's relationship to the tenant where there is a bare assignment from the landlord to the grantee without any assumption of the grantor's unperformed obligations.

2. SAME—CONTRACTS—CONVEYANCE OF LANDLORD'S INTERESTS—COVENANTS RUNNING WITH LAND—PRIVITY OF ESTATE.

    Conveyance of landlord's entire interest in leased, property terminates privity of estate formerly existing between original landlord and original tenant, and the benefits and burdens of all covenants running with the land passed to the transferee who, by such transfer, comes into privity of estate with the tenant, but such transfer does not terminate the contractual relationship between the original landlord and original tenant, which relationship continues to exist.

3. SAME—SUCCESSORS OF TENANT.

    The relation of landlord and tenant, once established, attaches to all who may succeed the tenant, immediately or remotely.

4. SAME—TRANSFER OF LANDLORD'S INTEREST—BREACH—DAMAGES.

    The fact that the transfer of a landlord's interest in a lease imposes on the transferee duties and rights formerly those of the transferor does not necessarily require that the trans-

---

· REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4–6, 9] 32 Am Jur, Landlord and Tenant § 716.
[3] 32 Am Jur, Landlord and Tenant § 846.
[7] 32 Am Jur, Landlord and Tenant § 717.
[8] 5 Am Jur 2d, Appeal and Error §§ 760, 761; 32 Am Jur, Landlord and Tenant § 716.

feree must answer for damages resulting from a breach prior to the transfer.

5. SAME—COVENANT TO REPAIR—DAMAGES.

A covenant to keep property in repair throughout the term of a lease is capable of constant or continuous breach, so that the fact that damages have been recovered for a breach of such covenant will not bar a second suit seeking damages suffered from the continued breach since the last recovery.

6. SAME—COVENANT TO REPAIR—LIABILITY OF ASSIGNEE.

The assignee of a landlord's entire interest in leased property, under a lease requiring the landlord to keep the property in good repair, may be required to remedy a breach of such covenant which occurred prior to the assignment, and is responsible for damages occurring through a breach of such covenant which occurs after the assignment, but, absent expressed provisions to the contrary in the lease, he has no liability for damages occurring prior to the assignment because of the failure of his transferor to keep the property in proper repair.

7. SAME—COVENANT TO REPAIR—ASSIGNEE—LIABILITY OF ASSIGNEE.

Liability of assignee of landlord's entire interest in leased property, for damages because of failure to make proper repairs, as required by lease, is limited to damages for failure to make proper repair sustained by the tenant after the date of such assignment, absent an expressed provision in the lease providing to the contrary.

8. SAME—REPAIRS—NOTICE—QUESTIONS REVIEWABLE.

Whether transferee of landlord's interest was entitled to a new notice of disrepair of the roof to warehouse premises is not determined where tenant's damages were sustained and were due to breach of covenant to repair occurring prior to transfer and transferee did not assume transferor's unperformed obligations.

9. SAME—COVENANT TO REPAIR—ASSIGNEE—LIABILITY OF ASSIGNEE—JUDGMENT.

Decision of trial court holding assignee of landlord's interest in leased property responsible for damages sustained by tenant before the assignment because of breach of covenant to repair *held*, error, where there was no express provision to the contrary in the lease, as an assignee is not liable for damages for breach which occurred, and damages thereunder sustained, before the transfer.

Appeal from Wayne; Weideman (Carl M.), J. Submitted Division 1 December 15, 1966, at Detroit. (Docket No. 2,093.)    Decided October 27, 1967.

Plaza Investment Company, a Michigan corporation, filed its complaint in the Common Pleas Court of Detroit against Sidney G. Abel and Peter J. Tomey, doing business as Abel & Tomey for sums allegedly due under a written lease.    Counterclaim for damage to defendants' property because of a defective roof.    Judgment for defendants.    Plaintiff appealed to the circuit court.    Judgment affirmed. Plaintiff appeals.    Reversed.

*Hertzberg, Jacob & Weingarten (Theodore Weiswasser,* of counsel), for plaintiff.

*Alexander, Braun, Plath & Ashley,* for defendant Tomey.

*Thomas M. Costello,* for defendant Abel.

LEVIN, J.    Plaza Investment Company purchased a store and a warehouse building occupied by Peter J. Tomey and Sidney S. Abel, doing business as Abel & Tomey, as tenants, under a written lease with Plaza's grantor, as landlord.

At the time of conveyance of the property to Plaza the landlord's interest in the lease was assigned to Plaza.    The instrument of assignment did not contain a provision expressing an assumption by Plaza of the landlord's obligations under the lease.

The lease required the landlord, after receiving written notice from the tenant, to keep the roof in good order and repair.

Shortly after October 1, 1962, the tenant discovered water damage to furniture held in the ware-

house for sale in the tenant's business. The tenant thereupon notified the original landlord and some repairs were made, but the leakage of water through the roof continued until cold weather prevented further flow of water. The leakage of water resumed in the spring of 1963, and the landlord was again requested to repair the defective roof, but the condition was not adequately remedied.

Plaza acquired the property on May 7, 1963. Plaza asserts it did not learn of the request to repair the roof or the defects therein until July 1, 1963, during the course of a meeting between representatives of Plaza and of the tenant. The date on which Plaza did in fact receive this information is not consequential as the tenant's evidence was that the bulk of the damage to its furniture was suffered in the spring of 1963 and, while there was some damage after May 7, 1963, it was not possible to determine the amount allocable to the period subsequent to that date.[1]

The tenant vacated the property in June, 1963, claiming, by reason of various circumstances, it was relieved of its obligations under the lease. This action was then commenced by Plaza seeking damages of $1,440. The trial court determined that Plaza was entitled to recover that amount, but also awarded the tenant on its counterclaim $3,061.21 for injury to its merchandise resulting from the defective roof, or a net recovery for the tenant of $1,621.21. Plaza appealed to the circuit court, which affirmed.

On this appeal by Plaza, the tenant neither cross-appealed nor on brief challenged the trial court's determination that Plaza was entitled to recover

[1] We have, therefore, proceeded on the assumption that the judgment in favor of the tenant on its counterclaim was for damages suffered by the tenant prior to the time of conveyance and assignment to Plaza. We also note that at the oral argument of this appeal counsel for the tenant conceded that no damages were suffered by the tenant after the transfer of the property to Plaza.

$1,440. Therefore, there is no need to consider the evidence concerning the tenant's vacation of the premises and the conflicting claims of the parties at the time of trial concerning the tenant's duty to pay rent.

Plaza's sole contention on this appeal is that as a matter of law it is not liable for the damages to the tenant's property suffered before Plaza purchased the property and acquired the landlord's interest in the lease.

Since Plaza did not assume its grantor's unperformed obligations, its liability for the damages awarded the tenant must arise, if at all, because of a relationship between Plaza and the tenant created by the bare assignment to Plaza of the landlord's interest in the lease.

It is, of course, arguable that Plaza, as the purchaser of the property, having acquired the landlord's interest in the lease and now seeking to enforce the provisions conferring rights on the landlord, should be responsible for the unperformed obligations of the landlord under the lease, and the tenant should not be required to maintain a lawsuit for breach of a landlord's covenant against the former owner who may have even departed the jurisdiction. However, we do not write on a clean slate—"the law as to leases is not a matter of logic *in vacuo;* it is a matter of history that has not forgotten Lord Coke." Per Holmes, J., *Gardiner* v. *William S. Butler & Company, Inc.* (1917), 245 US 603, 605 (38 S Ct 214, 62 L ed 505, 506).

In medieval England there were various restrictions on the transferability of rights embodied in documents. It was at one time thought, we are told, that there was some limitation on the right of a voluntary transferee of the reversion to enforce lease covenants. While the extent of these disabilities

has been questioned,[2] it is history that, in order to
facilitate the transfer of confiscated monastery land
that had been demised for a term of years, there
was enacted the statute of 32 Henry VIII, c 34, ex-
tending to transferees of the reversion, and to as-
signees of the term as well, the right to enforce lease
covenants.[3]

Despite the generality of the language used in the
English statute, its operative effect has been limited
to certain covenants described in *Spencer's Case,*
*i. e.* those that "touch and concern" the property and,
thus, run with the land—a covenant to keep in re-
pair is indisputably such a covenant.[4]

It is now established that upon a conveyance of
the landlord's entire interest in leased property
that the privity of estate formerly existing between
the original landlord and the original tenant is at
an end, and the benefits and burdens of all covenants
running with the land pass to the transferee who,
as a result of such transfer, comes into privity of

---

[2] Sims, The Law of Real Covenants: Exceptions to the Restate-
ment of the Subject by the American Law Institute; 30 Cornell Law
Quarterly 1, 9 (1944); 2 Platt on Leases, p 382 *et seq.* For another
discussion of the early history of the law, see Holmes, The Common
Law (1881), p 371 *et seq.*, especially beginning at p 388.

[3] See 2 Powell on Real Property, § 246[2], p 372.90; 32 Am Jur,
Landlord and Tenant, § 97; *Willcox* v. *Kehoe* (1905), 124 Ga 484
(52 SE 896); 6 Law Library (Comyn, Landlord and Tenant) (2d
ed, 1834), p 263; Fawcett's Landlord and Tenant (3d ed, 1905),
p 448. The English statute is set forth in Jacobs, Cases and Mate-
rials on Landlord and Tenant (1941), p 309, and is discussed
in *Michael* v. *Mitchell* (1947), 118 Ind App 18 (73 NE2d 363, 365),
and *Northern Pacific R. Co.* v. *McClure* (1899), 9 ND 73 (81 NW 52).

[4] See Coke's report of *Spencer's Case* (1584) (5 Co Rep 16a, 17b
[77 Eng Rep 72, 15 Eng Rul Cases 233, Co Abridge 135]). It was
there held that a covenant to repair property during the term of a
lease "is appurtenant, and goeth with the land." The rule in *Spencer's
Case* was followed in America from the beginning. *Pollard* v. *Shaaf-
fer,* Sup Ct of Pa (1787), 1 US 210 (1 L ed 104). *Spencer's Case*
is analyzed in 6 Law Library (Comyn, Landlord and Tenant) (2d
ed, 1834), p 258. See, also, Jones, Landlord and Tenant (1906),
§ 328, p 345; 2 American Law of Property, § 9.4, p 341; Foa, Land-
lord and Tenant (5th ed, 1914), p 422 *et seq.*; Rasch, The New York
Law of Landlord and Tenant (1950), §§ 520, 521, pp 447, 448; Gear,
Law of Landlord and Tenant (1888), § 84, p 243, § 180, p 650.

estate with the tenant; but this change of parties to the estate does not terminate the contractual relationship between the original landlord and the original tenant, which contractual relationship continues.[5]

These principles are so firmly embedded in the law of this State[6] that it would be academic to consider in this context whether the English statutes of general application are part of the common law of this State,[7] even though some of the cases referred to in this opinion (see, for example, footnote 3) proceed on the assumption that 32 Henry VIII, c 34 is part of the local law.

That a transfer of the landlord's interest in a lease does impose and confer on the transferee duties and rights formerly those of the transferor is clear, but it does not follow that the transferee must answer for damages resulting from a breach prior to the transfer.

---

[5] 1 American Law of Property, § 3.63, p 314; 2 McAdam, Landlord and Tenant (5th ed, 1934), p 1010; *Jones* v. *Parker* (1895), 163 Mass 564 (40 NE 1044). As to tenant's covenants, see *Sanford* v. *Sallan* (1933), 263 Mich 299, and *Buhl Land Co.* v. *Franklin Co.* (1932), 258 Mich 377.

[6] It has been held that the transferee of the reversion may enforce covenants of the tenant (*Perrin* v. *Lepper* [1876], 34 Mich 292); and that such a transferee becomes the landlord (*Hansen* v. *Prince* [1881], 45 Mich 519); and that the transferee takes subject to prepayments of rent (*Hovey* v. *Walker* [1892], 90 Mich 527) and to a right of first refusal in favor of the tenant (*Brenner* v. *Duncan* [1946], 318 Mich 1, and *Nu-Way Service Stations, Inc.*, v. *Vandenberg Bros. Oil Co.* [1938], 283 Mich 551). See, also, *Lee* v. *Payne* (1856), 4 Mich 106, 119: A successor to the tenant's interest renders "himself subject to all the duties and obligations imposed by the lease on the original lessees. It must be so, for it is a well-settled rule of law, that when the relation of landlord and tenant is once established, it attaches to all who may succeed the tenant, immediately or remotely." Similarly, see *Detroit Trust Co.* v. *Mortensen* (1935), 273 Mich 407, 410; *Walters* v. *Quality Biscuit Division of United Biscuit Company of America* (1953), 336 Mich 214; *Darmstaetter* v. *Hoffman* (1899), 120 Mich 48.

[7] See discussion of *Trask* v. *Green* (1861), 9 Mich 358, 365, and *In re Sanderson* (1939), 289 Mich 165, 174, in Brown, British Statutes in American Law 1776–1836 (1964), Mich Legal Studies, p 169 *et seq.*

Notwithstanding the expansive language of the English statute, it has frequently been said that a successor to the interest of a landlord or tenant is not liable for breaches by his predecessor and may not sue for breaches by the other party preceding the transfer or assignment.[8]

The rule that a transferee of the reversion is not answerable for a breach of a lease covenant committed prior to the tranfer is well supported.[9] Similarly there is ample authority holding that a transferee of the reversion cannot recover for a breach by the tenant committed prior to the transfer.[10]

However, the cases above cited for these propositions involve covenants, such as a covenant to construct improvements or to *put* in repair,[11] which are capable of breach but once. It has been suggested

[8] 32 Am Jur, Landlord and Tenant, § 100, p 107, § 373, p 320, § 716, p 591, and § 798, p 680; 51 CJS, Landlord and Tenant, § 44, p 571, § 258, p 897; 2 McAdam, Landlord and Tenant, *op cit*, p 1007: The grantee's "liability extends only to covenants broken during the time when he is possessed of the estate." See, also, at p 1012 regarding assignees of the term.

[9] *Gerzebek* v. *Lord* (1869), 33 NJL 240, 244; *Mirick* v. *Bashford* (1862), 38 Barb (NY) 191; *Coffin* v. *Tolman* (1853), 8 NY 465, 470; Jones, Landlord and Tenant (1906), § 334, p 353.

[10] *Michael* v. *Mitchell, supra; Haeussler* v. *Holman Paper-Box Company* (1892), 49 Mo App 631, 637; *Wallace* v. *Paulus Bros. Packing Co.* (1951), 191 Or 564 (231 P2d 417); 2 Taylor, Landlord and Tenant (9th ed, 1904), § 445, p 26; 1 Woodfall's Landlord and Tenant (1890), p 254 (ch 7, § 3). Some courts have justified denying recovery to a transferee of the reversion for breach of a tenant's covenant committed prior to the transfer on the ground that it is the original landlord rather than the transferee who was damaged by the breach. It is assumed that the original landlord had either sold the leased property for a lower price or received the full price on the supposition that the damage would be made good—in the former case the original landlord can sue on his own account, and in the latter case as trustee for the grantee. *Johnson* v. *Churchwardens of St. Peter* (1836), 4 Ad & E 520 (111 Eng Rep 883); *Michael* v. *Mitchell, supra; Shelby* v. *Hearne* (1834), 14 Tenn (6 Yerg 512); *Bailey* v. *Meade* (1924), 250 Mass 46 (144 NE 110, 112).

[11] See *810 West End Avenue, Inc.,* v. *Frankel* (1920), 113 Misc 338 (184 NYS 554), holding that a tenant will not be permitted to offset against rent otherwise due a transferee, for damages flowing from the transferor's breach of a covenant to decorate.

that where the breach is continuous in its nature the general principles heretofore discussed may not be applicable.[12]

A covenant to keep in repair throughout the term of the lease is capable of constant or continuous breach and, thus, the fact that damages have been recovered for a breach of such a covenant will not bar a second suit seeking damages suffered from the continuing breach since the last recovery. *Beach* v. *Crain* (1848), 2 NY 86; *Block* v. *Ebner* (1876), 54 Ind 544, 548; 2 McAdam, Landlord and Tenant (5th ed, 1934), p 1325; Foa, The Law of Landlord and Tenant (5th ed, 1914), p 216. See *Gerzebek* v. *Lord, supra,* at p 243; *Coffin* v. *Tolman, supra; Noble* v. *Tweedy* (1949), 90 Cal App 2d 738 (203 P2d 778); 2 Woodfall's Landlord and Tenant (1890), ch 16, § 3, p 925.

Returning to the facts of this case, it is undisputed that the roof that was in disrepair in the spring of 1963 was not repaired until some time after July 1, 1963, and, thus, the disrepair continued well after the date (May 7, 1963) of acquisition of the property by Plaza. Plaza contends, however, that the covenant to keep in repair was not broken by it because the notice to the original landlord was not notice to Plaza, and under the lease the duty of repair does not arise until such notice. In our view we need not decide whether Plaza was entitled to a new notice or was bound by the notice to the

---

[12] "Not only is the transferee of the reversion ordinarily unable to recover for a breach of the lessee's covenant occurring before the transfer, but he is as well exempt from liability for a breach of a covenant by the lessor, occurring before the transfer, *provided the breach is not to be regarded as continuous in its nature.* The transferor not the transferee violated the covenant, and consequently he is the one to be made liable." 1 Tiffany, Landlord and Tenant (1910), § 149 b (9), p 899. See, also Fawcett's Landlord and Tenant (3d ed, 1905), p 449. But see 32 Am Jur, Landlord and Tenant, § 100, p 108.

original landlord,[13] as here it is sought to hold Plaza
for breach by the original landlord of the covenant
to keep in repair, not for breach of such covenant
by Plaza—the judgment awarded by the trial court
to the tenant was for damages suffered (and, ac-
cordingly, for a breach that occurred) prior to the
conveyance and assignment to Plaza (see footnote
1). In consequence, any breach subsequent to May
7, 1963, by Plaza was not the breach on which the
damages adjudicated were predicated and, for that
reason, the only breach with which we need be con-
cerned is the breach by the original landlord.

Our analysis of the cases convinces us that while
a successor may be required to repair a breach that
occurs prior to the transfer or assignment to him,
a successor may be held responsible only for dam-
ages resulting from *his* breach and not for damages
resulting from any breach by his predecessor. We
find no authority holding a successor to the land-
lord's or tenant's interest liable for his predecessor's
breach. When the courts have found a successor
liable they have predicated such finding on a de-
termination that the successor himself breached or
repeated the existing breach of covenant.

The responsibility of a transferee of the reversion
for breach of his transferor's covenant has been
dealt with in various circumstances. It has been
held that a transferee of the reversion is not liable
on a covenant to put in repair breached prior to the
transfer of the reversion; but is liable on a covenant
to keep in repair although the property was in dis-
repair before transfer. *Coward* v. *Gregory* (1866),

---

[13] See *Fred Whitaker Co.* v. *Cohen* (1955), 7 Pa D & C 2d 105, 109,
stating (dictum) that a transferee of the reversion is entitled to such
notice. See, also, *Hewitt* v. *Rowlands* (1924), 93 LJKB NS 1080.

Our view of the matter also makes it unnecessary for us to decide
whether Plaza was or should have been aware of the extent of the dis-
repair of the roof and of the possibility of injury to the tenant of
the kind in fact sustained.

15 L T Rep NS (Eng) 279. A transferee has been held liable on a covenant to keep a roof in repair as to damages that were suffered after the transfer. *Fred Whitaker Co.* v. *Cohen*, (1955), 7 Pa D & C 2d 105. Accord: *Mitchell* v. *McNeal* (1893), 4 Colo App 36 (34 P 840).

The Michigan Supreme Court has held that a transferee who purchases leased premises with knowledge that the landlord has not performed and the tenant is insisting on performance of a covenant to remove a certain stairway and repair the surrounding area—which covenant clearly was broken prior to the transfer—could not enforce the lease against the tenant, such transferee not having remedied the breach. *Lynder* v. *S. S. Kresge Company* (1951), 329 Mich 359.

In *Moskin* v. *Goldstein* (1923), 225 Mich 389, 394, the Michigan Supreme Court held that on the expiration of a lease it was the transferees' duty "as landlords" to return to the tenant the money the tenant had deposited to secure performance of the lease.[14] In *Belden* v. *Union Warehouse Co.* (1896), 11 App Div 160 (42 NYS 650), it was stated that a transferee was liable on a landlord's covenant to pay the tenant for any shortages in grain stored in the landlord's warehouse that might be revealed by periodic accountings.

It has been held that a transferee of the reversion takes title to the property subject to an equitable lien in favor of the tenant for damages resulting from the breach of a predecessor's lease covenant to pay for improvements put on the land by the tenant. (*Ecke* v. *Fetzer* [1886], 65 Wis 55 [26 NW 266], citing *Mansel* v. *Norton* [1883], LR 22 Ch

---

[14] This case is discussed in a note, Landlord and Tenant—Deposit—Recoupment, 24 Colum L Rev 432 (1924), and in Security Deposits and Guaranties under Leases, 1 Real Property, Probate and Trust Journal 405, 420.

Div 769, which latter case held the transferee personally liable therefor).[15]

The scope of the liability of a transferee of the reversion is illuminated by the more numerous cases concerning the right of such a transferee to enforce a lessee's covenant. That the reasoning of cases involving lessee's covenants is "equally good for covenants by lessors", see Jones, Landlord and Tenant (1906), § 454, p 518, and *Jones* v. *Parker, supra.*

It has been held that a transferee of the reversion can recover full damages if the tenant permits premises out of repair prior to the transfer to continue out of repair after the succession. *Vivian* v. *Champion* (1705), 2 Ld Raym 1123 (92 Eng Rep 245), stating that was a damage after the succession to the heir of the reversion. Similarly, see *Bennett* v. *Herring* (1857), 3 CB (NS) 371 (140 Eng Rep 784), as to a covenant to complete an improvement and to keep the same in repair, and *Easterby* v. *Sampson* (1830), 6 Bing 644 (130 Eng Rep 1429), where it was held that the transferee could sue the tenant both for failure to build a structure and to keep the

---

[15] The matter is also discussed in *Coffin* v. *Tolman, supra* (accepting as a general principle the rule establishing such transferee liability, but finding that the convenant there before the court was not a continuing one and that it was breached before the transfer of the reversion), and in Jones, Landlord and Tenant (1906), § 332, p 351, *Purvis* v. *Shuman* (1916), 273 Ill 286 (112 NE 679); *Rhode Island Hospital Trust Co.* v. *J. B. Farnum Co.* (1937), 58 RI 86 (191 A 508); Note, Covenants Running with the Land—Necessity for Naming Assigns (1916), 15 Mich LR 79, and Abbott, Covenants in a Lease which Run with the Land (1921), 31 Yale LJ 127, 136, stating that the transferee may be held personally liable on such a covenant.

In *Willcox* v. *Kehoe* (1905), 124 Ga 484 (52 SE 896), the transferee was held free of liability because the covenant there was to reimburse for repairs and improvements, such reimbursement to take place at the time they were made. The court stated that the covenant was broken before the transfer and besides, so the court said, a promise to pay money cannot run with the land. Compare *Moskin* v. *Goldstein, supra.* Contrast: *Blasser* v. *Cass* (1958), 158 Tex 560 (314 SW2d 807), covenant to pay a broker commissions on exercise of a renewal option, expressly binding in the lease on a transferee; held not binding on the transferee.

same in repair.  In *Mascal's Case*, 1 Leon 63 (74 Eng Rep 58), the tenant was obliged to correct any disrepair after notice to do so from the landlord. A transferee who gave the tenant notice to repair after the transfer of the reversion prevailed against a defense that the premises were in disrepair prior to the transfer, the court holding that the action was not based on the disrepair, but rather for not repairing after notice—it was not material, said the court, within what time the house became ruinous, but within what time the warning was given.[16]

In *Hendrix* v. *Dickson* (1897), 69 Mo App 197, it was held that a covenant on the part of a tenant to pay taxes runs with the land and the "substantial breach"[17] occurs when the taxes are paid by the covenantee.  The breach was regarded as continuing both in the time of the ancestor and the heir, but since the court found that the substantial breach occurred in the time of the heir it held that the heir could recover the heir's damages arising from the substantial breach.  See 2 Platt on Leases, p 360.

Also relevant are cases concerning the nature of the liability of an assignee of the tenant's interest.[18]

---

[16] Discussed in Foa, Landlord and Tenant (5th ed, 1914), p 424.

[17] The "substantial breach" concept may have been borrowed from *Kingdon* v. *Nottle* (1815), 4 M & S 54 (105 Eng Rep 755, 756), where the devisee was permitted to sue the covenantor for breach of a covenant of title.

That the principles applicable to deed covenants are not necessarily pertinent in a case concerning lease covenants, see scope note to part 3, provisions respecting the use of land, Division V (Servitudes), 5 Restatement of Property, p 3147.

[18] The nature of the liability of one not contractually liable is illustrated by holdings and statements that a tenant liable only by reason of privity of estate may relieve himself of further liability for the payment of rent or otherwise under the lease by vacating the premises and assigning the term, even to an irresponsible party (not his agent), thereby terminating the assignor's estate.  *George Realty Co.* v. *Gulf Refining Co.* (1936), 275 Mich 442; *Cohen* v. *Todd* (1915), 130 Minn 227 (153 NW 531); *Kirby* v. *Goldman* (1930), 270 Mass 444 (170 NE 414); 2 McAdam, Landlord and Tenant (5th ed, 1934), p 1025; Foa, Landlord and Tenant (5th ed, 1914), p 417.  Contrast *Century Holding Co.* v. *Ebling Brewing Co.* (1918), 185 App Div

It has been held that an assignee of a mining lease was not responsible for unworkmanlike mining or other defects committed by its predecessor. *Allison v. Luhrig Coal Co.* (1901), 12 Ohio Cir Dec 504, aff'd 69 Ohio St 560 (70 NE 1125). Similarly, see *Washington National Gas Co. v. Johnson* (1888), 123 Pa St 576, 593 (16 A 799).

The view has been expressed that an assignee of the tenant's interest liable only by reason of privity of estate should not be responsible for dilapidations occurring before the time of his estate, even though continuing during the assignee's estate. Foa, Landlord and Tenant (5th ed, 1914), p 418. But see, also, at pp 426 and 635 *et seq. Haeussler v. Holman Paper-Box Company, supra; Wallace v. Paulus Bros. Packing Co., supra.*[19]

In contrast, it has been held that the duty to pay assessments was, "like a covenant to repair," a continuing one and that the assignee was liable even though the assignor was also liable—"until performance, there is a continual breach, and therefore the assignee is liable, though the first breach happened before the assignment." *Astor v. Hoyt* (1830), 5 Wend (NY) 603, 618. See, also, *Martyn v. Clue,* 18 QB 661 (118 Eng Rep 249), holding an assignee of the original tenant liable on a covenant to build and repair even though money was paid to the assignor therefor—the court said the covenant was continuing and ran with the land to the end of the

---

292 (173 NYS 49). See Note, Landlord and Tenant—Lessee's Covenant to Pay Taxes—Liability of Assignee who has Reassigned (1948), 47 Mich LR 135. See, also, however, 32 Am Jur, Landlord and Tenant, § 357, pp 312, 313.

[19] In *Foss v. Stanton* (1904), 76 Vt 365 (57 A 942), it was held that the original tenant's repair duty to a grantee of the reversion is to be measured by the condition of the property at the time of the transfer. This case is referred to in 1 Tiffany, Landlord and Tenant (1910), § 116, p 772. See, also, Jones, Landlord and Tenant (1906), § 402, p 444.

term; accord: *Harris* v. *Coulbourn's Assignee* (1841), 3 Harr (Del) 338.

It will be noted that in all the cited cases, the party held liable was found liable for an omission that he could yet correct by performance.[20]  Despite this thread of consistency, it is apparent there is not complete uniformity in the cases, and that grantees or assignees have been held liable under circumstances very much like those where others have been freed of liability.  The results in cases where successors have been held not liable have sometimes been rationalized in statements that, upon breach, the covenant ceases to run and becomes a chose in action,[21] that "the fact that there may be continuing damage arising from one complete breach does not make the cause of action out of which the damage flows a continuing cause of action," and that "the breach does not run with the land." *Morris* v. *Kennedy*, [1896] 2 IR 247, 263, 264.

But the inconsistency in the cases as to whether and when a covenant has been broken or is susceptible of further breach does not negate the precedential uniformity on the precise question before us.  Where liability has been found, the holding has been predicated on the breach of the party held liable rather than on the breach of his predecessor.[22]  In our view, the question before us is not whether a breach can run with the land or whether the covenant is capable of continuous breach.  It is apparent that

[20] However, in a case where the breach could not be corrected—the tenant having prior to the transfer of the reversion violated a covenant against assignment and subletting—the transferee was not permitted to assert the breach notwithstanding the court's view that the covenant was susceptible of breach on more than one occasion. *Cohen* v. *Tannar*, [1900] 2 QB 609.

[21] 2 Taylor, Landlord and Tenant (9th ed, 1904), § 445, p 26; *Wallace* v. *Paulus Bros. Packing Co., supra; Mirick* v. *Bashford, supra.*

[22] In those cases where a grantee of the reversion was held liable to pay a sum of money (*e.g.*, return of security deposit or for improvements put in by the tenant), the landlord's obligation to do so was expressed in the lease itself.

the nature of the liability under a covenant to keep in repair after notice of disrepair cannot be so precisely defined. However, in order to decide this case it is not necessary to determine the extent of the rights and obligations generally of transferees of the reversion and assignees of the term and in discussing the cases that have been discussed we intimate no opinion thereon.

It is enough to say that we have found no case holding a transferee liable as to acts or omissions all of which occurred before the transfer, none of the damage flowing from the breach having been sustained after the transfer. All the cases that have held transferees or assignees responsible have pointed to some act or omission of the party so held liable found by the court to have occurred after his estate began.[23] In this case, it is not asserted that any act or omission of Plaza subsequent to its purchase of the property caused damage to the tenant—indeed, it is not even asserted that any damage flowing from the breach by Plaza's grantor was suffered by the tenant after Plaza's purchase of the property. We are satisfied that Plaza has no obligation to pay for the damages resulting from the breach or breaches by its grantor, and we so hold.

Reversed. Costs to appellant.

LESINSKI, C. J., and BURNS, J., concurred.

---

[23] In *Churchwardens of St. Saviour's Southwark* v. *Smith* (1762), 3 Burr 1272 (97 Eng Rep 827), the action was against the assignee of the term. The following appears in the report of the case:

"Lord Mansfield said, the single question was, 'whether an assignee is liable for a breach which he never committed.' And it is certain 'that he is not.'" See analysis of this case in *Astor* v. *Hoyt, supra*.