KAREN NELSON MOORE, Circuit Judge, joined by SOLOMON OLIVER, JR., Chief District Judge,
concurring in part and constituting the majority opinion with respect to Part III-4.
We concur with the Judge White’s conclusion that this case must be remanded to the district court and join her opinion except for its analysis regarding whether Developers Diversified (“Developers”) should be held liable to Tokio Marine (“Tokio”) for the failure of Developers’ predecessor-in-interest, Service Hendon, to construct the tenant’s building in accordance with the agreed-to Lease specifications prior to its occupancy, as required by Lease ¶¶ 6(F) and 12(A)(ii). Because this question does not hinge on additional facts and the parties briefed the issue adequately on appeal, we reach the merits of Tok-io’s claim and hold that Developers cannot be held liable for Service Hendon’s failure to construct the building in accordance with the Lease’s precise specifications because the default occurred prior to the transfer of the lease interest and was not capable of repetition during Developers’ ownership.
The Lease provisions at issue read, in relevant part: “[The] Landlord shall construct Tenant’s Building in accordance with the Approved Drawings and Specifications,” App’x at 65 (Lease t6(F)), and “prior to and as a condition to the Date of Occupancy[,] Landlord shall have completed Tenant’s Building in accordance with the Approved Drawings and Specifications,” id. at 73 (Lease ¶ 12(A)(ii)). Although Developers did not design or construct the building, or even own the building at the time it was manufactured, when Service Hendon assigned the lease *670 Developers “assume[d] and agree[d] to perform all of the terms, covenants, obligations and conditions of the Lease[ ] which are required to be performed or complied with by [the] lessor under the Lease[], in respect of the period from and after the date of th[e] Assignment.” Record on Appeal (“ROA”) at 289 (Assignment Agreement). Finally, the Lease stated that “[t]he conditions, covenants and agreements contained in th[e] Lease shall be binding upon and inure to the benefit of the parties hereto and their respective ... successors [and] assigns,” and that “[a]ll covenants and agreements of th[e] Lease shall run with the land.” App’x at 110 (Lease ¶ 39).
Although the language of Lease ¶ 6(F) and ¶ 12(A)(ii) plainly required Service Hendon to construct the tenant’s building in compliance with the agreed-to specifications, the Lease also indicates that the obligation to do so came due at the time of the building’s initial construction and “pri- or to” its occupancy. App’x at 73 (Lease ¶ 12(A)(ii)). It was at this point that the contract was breached, and neither party disputes that during the relevant period Developers was neither the owner of the building nor its lessor. Tokio correctly asserts that generally all of Service Hen-don’s obligations under the Lease were transferred to Developers upon Service Hendon’s assignment of the Lease. See App’x at 110 (Lease ¶ 39); see also Griswold v. Income Props. II, No. 01A01-9310-CH-00469, 1995 WL 256756, at *4 (Tenn.Ct.App. May 4, 1995) (unpublished opinion) (“The [landlord’s] assignee is directly liable to the [tenant] for the obligations that run with the transferred interest.” (citing Hailey v. Cunningham, 654 S.W.2d 392, 396 (Tenn.1983), and the Restatement (Second) of Property § 16.2 (1976), among other sources)). As a result, after the assignment, Developers and the original tenant were in privity of estate. First Am. Nat. Bank v. Chicken Sys. of Am., Inc. 510 S.W.2d 906, 908 (Tenn.1974) (“[T]here is privity of estate between an original [tenant] and a subsequent [landlord] assignee.”); see also Restatement (Second) of Property § 16.1 cmt. e (1976) (“If the transferor is the landlord, the transferee comes into privity of estate with the other party to the lease ...”).
What is fatal to Tokio’s claim is that the recipient of a transferred interest, such as a lease assignee, “is liable on a promise that runs with the transferred interest only to the extent of a breach of the promise that occurs while the transferee is in privity of estate with the person entitled to enforce the promise.” Restatement (Second) of Property § 16.1 cmt. h (emphases added). “If the promise is capable of being broken only once, and was broken before the transfer, the transferee does not incur any personal liability with respect to it.”[1] Id. In the instant case, although Developers and the tenant were in privity of estate from the date of the Lease assignment onward, Service Hen-don’s failure to construct the building pursuant to the agreed-to specifications occurred prior to that time, and Service Hendon’s failure to do so was a breach of the Lease that could occur only once. Developers cannot be liable for Service Hen-don’s pre-assignment breach. See Regency Advantage Ltd. P’ship v. Bingo Idea-Watauga, Inc., 936 S.W.2d 275, 277 (Tex.1996) (“The issue here is straightforward. *671 Even assuming that [the landlord-assign- or] breached the lease ... [the assignee] did not breach the lease because the obligation to build out the premises accrued before the lease was assigned.”); Plaza Inv. Co. v. Abel, 8 Mich.App. 19, 153 N.W.2d 379, 383 (1967) (“We find no authority holding a successor to the landlord’s ... interest liable for his predecessor’s breach. When the courts have found a successor liable they have predicated such finding on a determination that the successor himself breached or repeated the existing breach of covenant.”); see also Katherine R. Napleton Revocable Self-Declaration of Trust v. Vatterott Educ. Ctrs., Inc., 275 Neb. 182, 745 N.W.2d 325, 329 (2008) (“It has generally been stated that an assignee ... of an interest in leased property is liable for a breach of a promise that runs with the land and which is broken while the assignee or transferee holds the leasehold estate, but is not liable for a promise that runs with the land if the promise is broken before the assignment or transfer.” (surveying cases)).[2]
Tokio claims that Developers’ privity of contract with the tenant via Developers’ assumption of the entirety of the Lease provides an independent basis for liability, but Tokio has put forth no evidence that Developers promised to perform or be held liable for Service Hendon’s pre-as-signment default of the specific contractual obligations under Lease ¶ 6(F) and ¶ 12(A)(ii). To the contrary, the agreement governing the assignment of the Lease between Service Hendon and Developers states that Developers assumed only those obligations “from and after the date of th[e] Assignment.” See ROA at 289 (Assignment Agreement). This language, afforded its natural meaning, indicates that Developers intended to assume only those obligations running “from and after the date” that Service Hendon assigned Developers the Lease. Id. We do not believe that this provision can be interpreted as evidencing Developers’ intent to assume, on the date of purchase, the entirety of the obligations and liabilities that Service Hen-don had theretofore accrued. Tokio’s assertion that “from and after” the assignment date “simply defines the date on which rights and liabilities under the several agreements shifted from Service Hen-don” to Developers, “namely on the date of the Agreement,” Appellant Br. at 38, is a strained reading of the language, and we believe it unpersuasive.[3]
*672 Our disagreement with Judge White concerns whether the failure to construct the building in accordance with the specifications set forth in the Lease prior to and as a condition of the tenant’s occupancy is a promise that is capable of being broken only once or whether it is capable of successive independent breaches such that Developers Diversified can be held liable. Although we respect Judge White’s conclusion that the “promise that the building [be] completed in accordance with plans and specifications” was capable of successive independent breach, we remain convinced that summary judgment in favor of Developers Diversified was proper on this claim.
First, we do not believe that Regency Advantage Ltd. Partnership v. Bingo Idea-Watauga, Inc., 936 S.W.2d 275 (Tex.1996), is distinguishable from the instant case in any meaningful manner. In Regency, the Supreme Court of Texas held that a landlord’s promise to “build out” a leased premise within forty-five days of receiving a tenant’s notification regarding permitting was capable of being breached but once and that “because the obligation to build out the premises accrued before the lease was assigned” to a successor in interest, that successor could not be held liable for the breach. Regency, 936 S.W.2d at 277. In essence, the original landlord in Regency was required to complete a particular task by a particular date, which it did not do. Similarly, in the instant case, “prior to and as a condition to the Date of Occupancy,” the original landlord was required to “have completed Tenant’s building in accordance with the Approved Drawings and Specifications.” Lease ¶ 12(A)(ii). Apparently, however, like in Regency, the original landlord failed to fulfill its obligation. Also like Regency, because the building was required to be completed in accordance with the drawings and specifications “prior to and as a condition to the Date of Occupancy,” we believe that the obligation to build a conforming structure accrued on that date, which was before the Lease was assigned to Developers Diversified. In other words, the Lease provision at issue did not simply require a conforming structure at some point during the lifetime of the interest; rather, it required a conforming structure by a particular date — i.e. prior to the tenant’s occupancy. See Lease ¶ 11(A) (defining “Date of Occupancy”).
Second, given the Lease’s requirement that the building be constructed in accordance with the specifications “prior to and as a condition to the Date of Occupancy,” App’x at 73 (Lease ¶ 12(A)(ii)), holding Developers Diversified liable for the original landlord’s failure to construct the building in a conforming manner would ignore the fact that the tenant occupied the building without complaint. Although not raised by either party, it is arguable that the tenant’s failure to object to the construction of the building at the time the promise came due — i.e., occupancy or a reasonable time thereafter — waived any claim for breach. The fact that the tenant had no obligation to inspect the roof in order to ensure that it was in good repair does not mean that it did not have some obligation to inspect the property to ensure that it conformed with the contractual specifications prior to occupancy. Of note, the Lease contains a provision allowing the tenant to terminate the Lease and collect liquid damages in the event that the building “shall not have been substantially completed in accordance with the Approved Drawings and Specifications ... and the requirements and pro *673 visions of this Lease,” which the tenant never invoked. See Lease ¶ 11(B).
Third, we do not agree with an analogy between the Lease provision at issue here and a promise to “keep a building in accordance with housing code safety and health standards.” Certainly, if Lease ¶¶ 6F and 12(A)(ii) required the landlord to “maintain” or “keep” the building in accordance with the original building specifications, then we would find the analogy more convincing because the plain language would signify an ongoing covenant or an indefinite obligation. But the obligation to maintain the roof in good repair was set forth in the Lease separately, see Lease ¶ 14(A)(i), and there is a distinct Lease provision, see Lease ¶ 14(A)(vii), which appears to require that the landlord ensure that the building remain compliant with the original specifications. If Developers Diversified should be held liable for anything related to the original construction defects, it would be under Lease ¶ 14(A)(vii), which is a question that we are remanding to district court.
In short, for all of these reasons, we conclude that the promise to construct a conforming building accrued prior to the original landlord’s transfer of the leasehold interest to Developers Diversified. We do not believe that the failure to construct (as opposed to maintain or keep) the building in accordance with the specifications set forth in the Lease prior to the tenant’s occupancy imposed a continuing obligation that was capable of successive and independent breach.
In sum, we conclude that, on the record before us, we can resolve Tokio’s claim that Developers is liable for Service Hen-don’s failure to construct the building in accordance with the agreed-to specifications under Lease ¶¶ 6(F) and 12(A)(ii). We hold that Developers, as a successor to Service Hendon’s interest in the leasehold, cannot be held liable for Service Hendon’s pre-assignment breach that was incapable of continuous or independent repetition subsequent to Developers’ assumption of the Lease. This opinion constitutes the opinion of the court on the matters discussed above. We join Judge White’s opinion except for Part III — 4.

. Although the Tennessee courts have never had the occasion to address the precise issue before the panel, based on the courts' reliance on the rules set forth in the Restatement (Second) of Property to resolve other cases involving leasehold interests and landlord-tenant relationships, see, e.g., Griswold, 1995 WL 256756, at *4; Cain P’ship Ltd. v. Pioneer Inv. Servs. Co., 914 S.W.2d 452, 459 (Tenn.1996), we believe that Tennessee would find the position set forth in the Restatement persuasive.

. We express no opinion on whether Tokio's claim that Developers can be held liable for Service Hendon's alleged pre-assignment breach of any other Lease provisions has merit. That question is properly left to the district court at this juncture. We note, however, that the other Lease provisions at issue are not clearly of the character as Lease ¶ 6(F) and ¶ 12(A)(ii), which are able to be breached only once. See, e.g., Abel, 153 N.W.2d at 383 ("A covenant to keep in repair throughout the term of the lease is capable of constant or continuous breach ..."). The fact that the other Lease provisions may impose a continuing obligation upon Developers may explain Developers and Service Hendon’s inclusion of an indemnity clause within their assignment contract that limits Developers’ liability to post-purchase breaches. For that reason, Tokio’s argument the indemnity clause would be meaningless if Developers were not held liable for the original construction defects is not convincing. See Appellant Br. at 39 ("If [Developers’] liability was limited to post-purchase breaches then it would have had no reason to have bargained for the inclusion of this indemnification provision.”). It would likely be applicable to those provisions capable of repetitive breach.

. Tokio argues that Developers could not "unilaterally delimit[ ] its liability to post-purchase breaches” to the detriment of the tenant under Tennessee law without a novation. Appellant Reply Br. at 21. But Tokio confuses the issue. Although Developers is not liable for Service Hendon’s pre-assignment breach, that does not mean that Service Hen-don cannot be held liable for its original breach. Tokio may have an existing remedy *672 against Service Hendon as the original lessor with whom it has privity of contract, so Tok-io’s rights have not been limited by the agreement between Service Hendon and Developers.