KOKKONEN v WAUSAU HOMES, INC

Docket No. 78-4308. Submitted October 4, 1979, at Marquette.—Decided January 3, 1980.

Robert and Sue Kokkonen purchased a factory-built home from Wausau Homes, Inc., and contracted with George Lepisto for site preparation and construction of the foundation for the home. After the Kokkonens moved in, leaks were found in the foundation, and they discovered that the foundation was not built to the depth called for in the Lepisto contract. The Kokkonens brought an action for breach of contract against Lepisto, who counterclaimed for a sum of money owing on the contract. Later, upon discovery of water damage to the ceilings, the Kokkonens amended their complaint to include a claim against Wausau for damages for a defective roof. The Houghton Circuit Court, Stephen D. Condon, J., entered judgment on the jury verdict in favor of the plaintiffs against Wausau for the roof damage, in favor of the plaintiffs against Lepisto for a nominal amount on the foundation damage claim, and in favor of Lepisto on his counterclaim. The jury had added a proviso on the award to Lepisto that he finish the rough grading work, but that proviso was striken by the trial court. The plaintiffs brought a motion for a judgment notwithstanding the verdict, a new trial, or *additur* on their claim against Lepisto. The motion was denied, and plaintiffs appeal. Wausau, which also brought a motion for a judgment notwithstanding the verdict which was denied, cross-appeals. *Held:*

1. Wausau, in its cross-appeal, contends that the evidence failed to show a faulty roof condition causing the water dam-

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 886

[2] 58 Am Jur 2d, New Trial § 148 *et seq.*

[3] 22 Am Jur 2d, Damages § 345.

[4] 22 Am Jur 2d, Damages § 26.

[5] 22 Am Jur 2d, Damages § 346.

[6] 13 Am Jur 2d, Building and Construction Contracts § 79.

Cost of correction or completion, or difference in value, as measure of damages for breach of construction contract. 76 ALR2d 805.

[7] 46 Am Jur 2d, Judgments § 751.

age. Viewing the evidence in the light most favorable to the nonmoving party, the plaintiffs, there was sufficient evidence to support the submission of the question to the jury; therefore, the trial court properly denied Wausau's motion for a judgment notwithstanding the verdict.

2. There was sufficient evidence presented to submit to the jury the plaintiffs' claim against Lepisto for water damage; therefore, the trial court's denial of the plaintiffs' motion for a new trial or for *additur* was proper as to that claim.

3. The trial court erred in regard to the plaintiffs' claim against Lepisto for repairs to the foundation where the court, in its instructions to the jury, permitted the jury to award an amount which would fairly compensate the plaintiffs but refused to give any instructions on the measure of damages and essentially precluded the jury from considering any evidence of the amount of damages.

4. It is probable that if the jury had known that it was unable to add the specific performance requirement to the award for Lepisto on his counterclaim they would have awarded the plaintiffs a greater amount on the claim against Lepisto. The judgment on the counterclaim must, therefore, be vacated and a new trial granted on that claim. A new trial is also ordered on the plaintiffs' claim for repair of the foundation.

Affirmed in part, reversed in part, and remanded.

1. APPEAL AND ERROR — MOTIONS — JUDGMENT NOTWITHSTANDING THE VERDICT.

The Court of Appeals views the evidence in the light most favorable to the nonmoving party when reviewing the grant or denial of a motion for a judgment notwithstanding the verdict.

2. MOTIONS — NEW TRIAL — QUESTION OF FACT.

Denial of a plaintiff's motion for a new trial or for *additur* on the grounds that the jury verdict was inadequate was proper where the evidence presented a question of fact for the jury as to the cause and responsibility for the plaintiff's alleged loss.

3. DAMAGES — INSTRUCTIONS TO JURY — EVIDENCE.

Jury instructions on damages must be related to the evidence in the case.

4. DAMAGES — FUTURE DAMAGES — CERTAINTY OF OCCURRENCE.

An award of future damages is allowable if those damages are reasonably certain to accrue.

5. DAMAGES — INSTRUCTIONS TO JURY — MEASURE OF DAMAGES.

A trial court is required to instruct a jury as to the proper measure of damages consistent with the proofs introduced at trial.

6. DAMAGES — CONTRACTS — BUILDING CONSTRUCTION — MEASURE OF DAMAGES.

The measure of damages for breach of a building construction contract is the amount necessary to make the building conform to the plans and specifications where only slight additions or alterations are required to finish the work at a reasonable cost without interfering with the rest of the structure; where the defects cannot be remedied without demolition of the building and the building is worth less than it would have been if constructed according to the contract, the measure of damages is the difference between the value of the building actually tendered and the reasonable value of that which was to have been built.

7. JURY — VERDICTS — DEFECTIVE VERDICTS.

It is the duty of a trial court to correct defective and irregular verdicts.

*Tercha & Daavettila,* for plaintiffs.

*McLean & McCarthy,* for defendant Lepisto.

*Von Wiegan & Corcoran,* for defendant Wausau Homes, Inc.

Before: ALLEN, P.J., and BASHARA and BEASLEY, JJ.

ALLEN, P.J. This cause involves an action for a breach of contract, negligence and breach of implied warranty against Wausau Homes, Inc. (Wausau), manufacturer of factory-built homes from whom plaintiffs purchased a home for $19,055, and George Lepisto, a building contractor and franchise dealer for Wausau, who contracted to clear plaintiffs' lot, construct a foundation, install tile and perform rough grading work for $4,000. After the home was erected in late July, 1977, and

plaintiffs commenced occupancy, leaks were found in the foundation. Investigation disclosed the foundation was not built at a depth for which the contract called. Upon receiving this information, plaintiffs filed the instant action against Lepisto, alleging breach of the foundation-site contract. Defendant Lepisto filed a counterclaim demanding the remaining $500 which plaintiffs had not paid on the $4,000 foundation-site contract.

In the spring of 1978, staining and warping were discovered in the ceiling spaces, whereupon plaintiffs amended their complaint to include a claim against Wausau for a defective roof.

At the conclusion of the trial, which continued from July 31, 1978, until August 4, 1978, the jury returned the following verdict: (1) for the plaintiffs against the defendant Wausau for the roof damage, $2,100; (2) for the plaintiffs against the defendant George Lepisto on the foundation claim, $250; (3) for the defendant Lepisto against the plaintiffs on Lepisto's counterclaim, $500, with the proviso that the rough grading work was to be completed.

Plaintiffs do not appeal the award for roof damage against Wausau, but Wausau, by way of cross-appeal, appeals the trial court's failure to grant Wausau's motion for judgment notwithstanding the verdict. Plaintiffs' motion for judgment notwithstanding the verdict, or new trial, or *additur* on plaintiffs' claim against Lepisto was denied by the trial court on September 28, 1978, and plaintiffs appeal of right. We address the three claims *seriatim*.

## I. PLAINTIFFS' CLAIM AGAINST WAUSAU

Cross-appellant Wausau argues that there was virtually no evidence that the home had an ice-

damming condition in the winter of 1977-1978, and accordingly the trial court erred when it failed to grant cross-appellant's motion for judgment notwithstanding the verdict. There is no doubt that water seeped through the roof causing stains on the interior of the home. The only question is whether the leakage was caused by "ice damming" resulting from faulty construction of the home by Wausau or was caused, as claimed by Wausau, by "moisture loss phenomenon" common to all homes.

Plaintiffs' expert witness testified that he examined the roof and found partially cracked plywood and improperly placed insulation material obstructing the roof ventilation spaces which allowed heat to penetrate through the roof from inside the house causing snow on the roof to melt, flow down the roof decline, and freeze at the eaves, forming a dam behind which water collected and then seeped through the shingles into the home interior. Though cross-appellant introduced expert testimony that the leakage was moisture loss which occurs in even the most perfectly constructed home, the testimony of plaintiffs' expert was sufficient to raise a question of fact submissible to the jury. *Grand Trunk Western R Co v H W Nelson Co, Inc,* 116 F2d 823, 840-841 (CA 6, 1941), *reh den* 118 F2d 252 (1941). Viewing the evidence in the light most favorable to the nonmoving party on a motion for judgment notwithstanding the verdict, we find ample evidence to support referring the question to the jury. *Ringo v Richardson,* 88 Mich App 684; 278 NW2d 717 (1979).

## II. PLAINTIFFS' CLAIM AGAINST LEPISTO

The breach of contract claim against defendant Lepisto is threefold: (1) $2,179.39 for costs of cor-

recting the extensive water leakage in the basement caused because (a) the drain tiles were not placed at proper depth, (b) insufficient quantities of gravel or crushed rock were placed around the tiles, and (c) the ground surface around the basement was not sloped away from the foundation, (2) $1,873 for costs of insulating the foundation so as to prevent frost damage likely to be incurred because the foundation was not dug to the depth required by the contract, and (3) $240 for plaintiffs' work on site preparation plus $400 for future work required to properly clear the lot. The jury returned a verdict in favor of plaintiffs for $250. While the verdict did not identify which claim the $250 award supported, we agree with defendant's counsel that the $250 was awarded on the site preparation and lot-clearing claim.[1] This leaves only items (1) and (2) of plaintiffs' claim against Lepisto to be resolved on appeal.

We have no problem in affirming the trial court on the claim for water leakage in the basement. Just as a question of fact was presented allowing plaintiffs to submit their claim for damages against Wausau to the jury, so too a question of fact is raised on the claim for water damages allowing the defendant to submit that claim to the

[1] "On the issue of lot clearing, it is fair to say that the jury returned a verdict for the plaintiffs in the amount of $250, for that portion of the lot clearing they initially did under an oral agreement with Mr. Lepisto that they would get credit for it. Thus, Mr. and Mrs. Kokkonen testified that they spent about 60 hours in clearing the lot, at a time when he was making $4.46 per hour and she was making $3.00 per hour. The plaintiffs' attorney used a figure of $4.00 per hour for approximately 60 hours as a 'guideline', and defense counsel did not dispute credit for what the plaintiffs had actually done. On the other hand, defense counsel did dispute the balance of the plaintiffs' claim for $400 for future rough grading and clearing of the stumps left by the plaintiffs' wood cutting operation. It is most reasonable to assume that the jury gave the plaintiffs $250 for the work already done, but rejected their claim for an additional $400." Defendant Lepisto's brief pp 29-30.

jury. Lepisto's defense to the basement water leakage claim was that the leaking basement was due to the lack of fill on the lot and that the responsibility for providing the fill was plaintiffs'. He testified to such effect and this testimony was extensively corroborated by a civil engineer who formerly had taught engineering mechanics at Michigan Technological University. While plaintiffs introduced evidence to the contrary, defendant's testimony was more than sufficient to refer the question to the jury. Accordingly, as to this portion of plaintiffs' claim, the trial court did not err when it denied plaintiffs' motion for a new trial or *additur*.

A more difficult problem arises in regard to the claim for foundation repairs. The contract between plaintiffs and George Lepisto called for the construction of a foundation in accordance with the Wausau Homes blueprints. The blueprints contained language that the footings should be no less than four feet deep with six blocks on top of the footings. At trial, Lepisto conceded that the wall was only five blocks deep, and because of rock it was impossible to sink footings 48 inches deep. He further testified that he neither informed the owners of the change nor obtained a modification of the building permit. Plaintiffs' expert, Robert Papworth, stated the footings as constructed would be "very much" susceptible to frost damage. Witness Papworth then testified that there were three options available for correcting the breach:

1. A procedure could be followed whereby the foundation would be insulated on the outside with styrofoam, at a cost of $1,873 (Exhibit 16). However, plaintiffs could not leave the home unheated in the winter, should they decide to vacation in Florida.

2. The area under the footing could be dug out and concrete poured in to bring the footing to a proper depth. No estimate of cost was given.

3. The wood frame portion of the house could be raised or jacked up and additional courses of concrete block laid on top of the existing foundation and then fill could be added around the foundation so as to bring the footing to an appropriate depth at an estimated cost of $6,000 to $7,000.

Option 1 was recommended as the most economical and practical means of minimizing the danger of frost damage. Plaintiffs' Exhibit 16 showing option 1 costs of $1,873 was duly admitted into evidence. However, after the close of all proofs and all parties had formally rested, counsel for defendant Lepisto called the court's attention to *O'Donnell v Oliver Iron Mining Co,* 273 Mich 27; 262 NW 728 (1935), a case in which the Supreme Court held that in actions for structural damage caused by subsidence, damages were not recoverable until the damage had occurred. In the instant case no testimony was introduced that frost damage had in fact occurred, only evidence of a likelihood of it occurring in the future was introduced. Accordingly, the trial court reversed its earlier ruling, excluded Exhibit 16 and charged the jury:

"You are further instructed that you are to disregard the estimates by Mr. Papworth for the cost of remedying any potential frost damage to the foundation and its footings. The exhibit containing this estimate is not allowed by the Court."

The court then refused, over plaintiffs' objection, to give any instruction as to the measure of damages on the claim for improper construction of the foundation. Plaintiffs' requested instructions Nos. 18-21 set forth the measure of damages if the jury

found a breach of contract on the matter of the depth of the footings.[2] Then, when plaintiffs' counsel, in arguing plaintiffs' case to the jury, referred to witness Papworth's testimony that the cost of placing the footings below the frost line would be between $6,000 and $7,000, objection was made by opposing counsel. The objection was sustained, the trial court saying:

"THE COURT: The amount of damages, Ladies and Gentlemen of the Jury, the amount is to be left in your sole discretion, I'll put it that way. Any arguments by counsel as to the figures as to what you should return in the form of damages is not to be taken by you as evidence in this case. All right."

We conclude that the trial court erred. The court's ruling, though permitting the jury to award an amount which would fairly compensate plaintiffs, precluded the jury from considering the evidence of damages. Instructions on damages must be related to the evidence in the case. 25A CJS, Damages, § 180; 22 Am Jur 2d, Damages, § 345. When the trial court instructed the jury to

[2] *Requested Instruction No. 18:* "amount awarded should be measured by the reasonable expense of necessary repairs".
*Requested Instruction No. 19: "amount awarded should be measured by the difference between the fair market value of the home had the footings been constructed in accordance with the contract and the value of the home with footings as actually constructed".*
*Requested Instruction No. 20:* "amount awarded should be measured by the reasonable expense of necessary, corrective action on the footings plus the loss in value of the home, if any, between the fair market value of the home had the footings been constructed in accordance with the contract and the value of the home with footings as actually constructed."
*Requested Instruction No. 21:* "then you should award such an amount of damages as would place the plaintiffs in the same position as they would have been if the foundation contract had been fully and properly performed". The court rejected these instructions and gave a generalized instruction that if the jury found defendants breached their contract, "your verdict should be in such an amount that fairly compensates the plaintiffs for the damages which arise naturally from the breach".

disregard the exhibits and testimony regarding costs, the court shut the door on any award of damages. Given the strong admonitions of the court, we cannot conceive how a jury would venture to award anything even if they found the contract was breached in regard to the depth of the footings.

Unfortunately, though understandingly, the court's reliance on *O'Donnell v Oliver Iron Mining Co, supra,* was misplaced. That case is inapposite on four grounds. *First,* unlike the case before us where there was a contract between plaintiffs and defendant, the suit was solely in tort. *Second,* actions for damages for subsidence, where repeated slides of earth occur, appear to carry their own special rules on damages.[3] *Third,* in *O'Donnell,* the Court reduced a jury award based on a future total destruction of the property but did award damages for the cost of repairs. In the instant case, the cost of repairs (Exhibit 16) was excluded. Fourth, the *O'Donnell* court itself cautioned that its holding would not apply where the damages, though still *in futuro,* were bound to occur. *Id.,* p 40.

As was stated in *O'Donnell, in futuro* damages are allowable if bound to occur. For example, if one contracts to buy an automobile with rustproofing and the car is delivered without rustproofing, it is not necessary to wait until the car rusts through before recovering damages. The fact that the car would ultimately rust is so reasonably certain that it is not necessary to wait until the damage occurs. In the case before us the issue was

---

[3] See 9 Michigan Law and Practice, Damages, §§ 22, 23. In § 23, p 36, the *O'Donnell* decision is mentioned in a separate paragraph discussing damages for "withdrawal of lateral supports through mining operations not subjacent or adjacent to the property, but a considerable distance therefrom".

whether (a) Lepisto failed to construct the footings and foundation in accordance with the Wausau blueprints, and (b) if so, whether such failure created a reasonable certainty of damage from frost upheaval. On both questions the testimony was conflicting, particularly on question (b). However, plaintiffs' proof of the certainty of future damage was strong and persuasive.[4] Based on the testimony, it was for the jury to first decide whether damage was so likely to occur. *Gilson v Bronkhorst,* 353 Mich 148, 153-158; 90 NW2d 701 (1958), *Prince v Lott,* 369 Mich 606, 609-610; 120 NW2d 780 (1963), *Johnson v C & O R Co,* 6 Mich App 611, 617; 150 NW2d 178 (1967), *Savage v Parts Warehouse Co,* 19 Mich App 416, 419; 173 NW2d 7 (1969).

In this regard, the following statements are instructive:

"As a general rule, where a cause of action is complete a recovery may be had of prospective damages which it is reasonably certain will accrue. * * * Where no subsequent action may be maintained, all damages present and future may be recovered." 25 CJS, Damages § 29.

---

[4] "Q. Mr. Papworth, the 48 inch standard that you referred to, that is a minimum standard?

"A. The 48 inch depth of frost is the commonly used engineering figure for the Copper Country area for the depth of footings below the surface of the ground.

"Q. Okay. And is it your testimony that in certain areas the frost would penetrate further than that, and under some circumstances it might be less than that?

"A. That is correct.

\* \* \*

"Q. Is it your opinion, sir, that anyone who constructs a foundation and has the bottom of the footing less than 48 inches is taking a considerable chance?

"A. Yes.

"Q. Because if the frost does penetrate, the house could in fact be ruined, isn't that true, sir?

"A. Yes."

"Prospective damages—that is, damages which compensate for future losses reasonably certain to arise from a past breach of a contract promise—can be recovered when there is a total breach of a promise which has formed the consideration for an entire and indivisible contract." 22 Am Jur 2d, Damages, § 29, p 49.

and, see generally, McCormick, Damages (1971 ed), §§ 13, 28, 161. Therefore, to the extent that plaintiffs in the case at bar have submitted proofs to a reasonable degree of certainty of damages which have not yet accrued at the time of trial, but which in the nature of things must necessarily or most probably will result from defendant's alleged breach of contract, we conclude that plaintiffs were entitled to submit the question of future damages to the jury. Compare, *Tucker v Tucker,* 24 Mich 426, 428 (1872), *Arnone v Chrysler Corp,* 6 Mich App 224, 228-229; 148 NW2d 902 (1967). Accordingly, it is necessary to conclude that the trial court erred in precluding the jury from a proper consideration of the damages alleged by plaintiffs to have been caused by defendant Lepisto's improper construction of the foundation.

Therefore, plaintiffs' claim for repairing the foundation to prevent frost damage is remanded to the trial court for retrial. Upon retrial, and assuming plaintiffs' proofs are substantially similar to the testimony in the present case, the jury shall decide whether defendant Lepisto breached the contract and, if so, whether such breach created a reasonable certainty of damage from frost upheaval.[5] If the jury answers that question in the affirmative, damages shall be awarded.

---

[5] We note that the question of damages arising from a breach of contract is normally assigned to the jury where such question is based on conflicting evidence. However, since the question of future or prospective damages requires a "reasonable certainty" that the damages will result from the original breach, the trial court is required,

In awarding damages, the jury is required to be instructed as to the proper measure of damages. *Gutov v Clark,* 190 Mich 381; 157 NW 49 (1916). In this regard, the trial court is required to instruct the jury in accordance with the correct rule of law concerning the breach of construction contracts by the builder:

"The rule is that where the contract is substantially complied with, and the building is such a one as is adapted for the purpose for which it was constructed, and only slight additions or alterations are required to finish the work according to the contract, the defects being remediable at a reasonable expense, and without interfering with the rest of the structure, the measure of damages is such a sum as is necessary to make the building conform to the plans and specifications. But, where the defects are such that they cannot be remedied without the entire demolition of the building, and the building is worth less than it would have been if constructed according to the contract, the measure of damages is the difference between the value of the building actually tendered, and the reasonable value of that which was to be built." *Gutov v Clark, supra,* at 387.

Accord, *Otto Misch Co v E E Davis Co,* 241 Mich 285, 294-296; 217 NW 38 (1928), *P & M Construction Co, Inc v Hammond Ventures, Inc,* 3 Mich App 306, 315; 142 NW2d 468 (1966), *Dierickx v*

---

as a matter of law, to determine the sufficiency of the evidence before the question of damages can be submitted to the jury. *Gilson v Bronkhorst, supra,* at 155, and see 25A CJS, Damages, § 176(3) pp 172-173. Nonetheless, presuming as we have in this case that plaintiffs' proofs on retrial will be substantially similar to those which were previously offered, we would find that plaintiffs have established the necessary degree of probability of the apprehended future consequences of the breach as to amount to a reasonable certainty that the damages will occur. *In re Boyer's Estate,* 282 Mich 552, 556; 276 NW 552 (1937), *Kellom v City of Ecorse,* 329 Mich 303, 308; 45 NW2d 293 (1951). Sufficient, at least, to submit the issue to the jury.

*Vulcan Industries,* 10 Mich App 67; 158 NW2d 778
(1968) (warranty action), *Caradonna v Thorious,* 17
Mich App 41, 45; 169 NW2d 179 (1969), *Schultz v
Sapiro,* 23 Mich App 324, 327-328; 178 NW2d 521
(1970), *Baranowski v Strating,* 72 Mich App 548,
562-563; 250 NW2d 744 (1976) (negligence action).
And see, 7 Callaghan, Michigan Civil Jurispru-
dence, Damages, § 94, 25 CJS, Damages, §§ 74-76,
Anno: *Cost of correction or completion, or differ-
ence in value, as measure of damages for breach of
construction contract,* 76 ALR2d 805, 5 Corbin on
Contracts, §§ 1089-1091, Restatement, Contracts,
§ 346, 13 Am Jur 2d, Building and Construction
Contracts, §§ 76, 79, 80, 81. On remand, the lower
court is required to instruct the jury on the proper
measure of damages consistent with the proofs
introduced at trial.

### III. Defendant Lepisto's Counterclaim

On the counterclaim, the jury returned a verdict
as follows: "[F]or George Lepisto against Robert
Kokkonen for $500.00, *with rough grading to be
completed"* (emphasis added). Plaintiffs' counsel
did not object to the verdict at the time, but soon
thereafter filed a post-trial motion challenging the
verdict on grounds that under the decision in *J
Richardson & Co v Noble,* 143 Mich 546; 107 NW
274 (1906), the jury exceeded its authority. Follow-
ing a hearing, the trial court characterized the
emphasized language as mere surplusage and or-
dered that it be stricken from the judgment.

On appeal, Lepisto contends that *J Richardson
& Co, supra,* is distinguishable because here, un-
like the situation in that case, it is altogether
possible that the jury intended that the plaintiffs,
not Lepisto, finish the rough grading. In addition,
it is argued that plaintiffs waived any error by

failing to request on the date the verdict was given that the jury be returned for further deliberations so that a proper verdict could be rendered. *White v Huffmaster,* 321 Mich 225; 32 NW2d 447 (1948).

We disagree. The rough grading work was never characterized as anyone's responsibility other than Lepisto's. Further, it would be totally redundant and unnecessary to add the proviso if the jury had intended that the work be completed by the Kokkonens. If that had been the jury intent, all the jury would have to do is omit the emphasized words.

It is our opinion that if the jury had known it could not combine specific performance with a money judgment, the jury would have granted a greater sum of money. In this respect we find the instant situation similar to *Richardson.*[6] In particular, we believe that had the jury known that it was beyond its power to order Lepisto to finish the grading, it may well have allowed more than $250 on the site preparation portion of the plaintiffs' claim. See footnote 1, *supra.* Likewise, we reject defendant's waiver argument. We find no case holding that counsel's failure to immediately object to the jury's verdict precludes all future claims on that issue. Such cases as there are on this point suggest that it is the duty of the trial court to correct defective and irregular verdicts. *McCormick v Hawkins,* 169 Mich 641, 649; 135 NW 1066 (1912), *Sadlowski v Meeron,* 240 Mich 306, 313; 215 NW 422 (1927). Plaintiffs' motion for a new trial, *additur* or judgment notwithstanding

---

[6] "But it is said that part of the verdict giving plaintiff possession of the shoes may be treated as surplusage and the balance of the verdict be permitted to stand. We cannot assent to this suggestion because we think it clear the money part of the verdict would not have been rendered if the jury had understood they had no authority to decide who was entitled to the possession of the shoes then in the warehouse." *Richardson, supra,* at 549-550.

the verdict sufficiently precluded the claim of waiver.

Accordingly, the order of the trial court denying plaintiffs' motion for judgment notwithstanding the verdict, *additur,* or a new trial is reversed with respect to the counterclaim. In addition, the judgment entered on the counterclaim is vacated. A new trial is ordered on the counterclaim and on plaintiffs' claim for repair of the foundation to prevent damage from frost. In all other respects, the order and judgment of the trial court are affirmed.

Affirmed in part, reversed in part, and remanded in accordance with this opinion. Costs to plaintiffs on the claim against Wausau Homes, Inc. No costs between plaintiffs and defendant Lepisto, neither party having prevailed in full.