# STATE OF MICHIGAN

# COURT OF APPEALS

JOHN MICHAEL JONES and OUTBACK
PROPERTY MANAGEMENT, LLC,

UNPUBLISHED
May 24, 2018

Plaintiffs-Appellants,

v

No. 334447
Macomb Circuit Court
LC No. 2015-001987-CB

WESTMINSTER, LLC and LEONARDO
ROBERTS,

Defendants-Appellees.

Before: CAMERON, P.J., and SERVITTO and GLEICHER, JJ.

PER CURIAM.

The doctrine of res judicata holds that a judgment on the merits in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action. If a continuing course of wrongful conduct gives rise to a new cause of action, however, res judicata does not apply. Similarly, claims that could not have been brought at the time of the first action are not barred.

This case involves both exceptions to res judicata. Plaintiffs' first lawsuit charged that defendants violated a contractual agreement. The circuit court agreed, and awarded plaintiffs their damages up to the date of the judgment. The court also fashioned injunctive relief intended to prevent future harm. But after the judgment and injunction entered defendants violated the agreement and thumbed their nose at the injunction. Plaintiffs filed a second suit seeking to avenge these new wrongs. The circuit court dismissed plaintiffs' breach of contract claim on res judicata grounds. Because the doctrine does not apply to continuing contractual breaches engendering new damages, we vacate the circuit court's order and remand for further proceedings.

## I. BACKGROUND

The parties are two companies and their individual owners. Plaintiffs John Jones and his company, Outback Property Management, entered into a business relationship with defendants Leonardo Roberts and his firm, Westminster, LLC. Jones is a licensed realtor. He agreed to buy and manage properties on behalf of Outback and its clients, mostly Australian investors.

The parties parted ways. In 2010, they forged a "Global Release of Claims" (GRC) without need for a lawsuit. Plaintiffs agreed to pay defendants $65,000, and to relinquish four computers and a Ford Truck. In return, defendants "release[d] and forever discharge[d]" any and all claims against plaintiffs. Defendants also "agree[d] not to institute any action against [plaintiffs] or file any complaints with any government agency or professional boards." The subsequent litigation stems from this provision.

Despite the GRC's unambiguous terms, defendants filed complaints against plaintiffs with the Department of Licensing and Regulatory Affairs (LARA). Plaintiffs responded by filing their first lawsuit. The 2013 complaint alleged, in relevant part, that "on or about 03/28/2012 the Defendants breached [the GRC] by filing a complaint with the State of Michigan falsely accusing the Plaintiff of embezzlement, fraud and other crimes and requesting damages and sanctions against Plaintiff." The circuit court granted partial summary disposition in plaintiffs' favor on their breach of contract claim, and instructed the parties to "work . . . out" the question of damages. The court also conveyed its willingness to consider an injunction as an element of plaintiffs' relief.

The parties were unable to come to terms regarding damages or the language of an injunction. During a hearing, both the court and plaintiffs' counsel acknowledged that LARA might proceed with its investigation even if defendants withdrew their complaints. Plaintiffs' counsel observed, "But I think we're going to have continuing damages" if the state did not desist. The court expressed its inclination to enter a preliminary injunction ordering defendants "to seek to withdraw" the complaint and to conduct an evidentiary hearing regarding "the monetary damages based upon the attorney fees, et cetera." Defendants argued that injunctive relief was improper because plaintiffs had "already monetized their remedy." The court responded:

> They haven't monetized the future damages should the State proceed and pull the license and say he cannot participate. So I think that what we're trying to do is mitigate any potential damages by asking, by this court ordering [defendants] to request a withdrawal of [their] complaint from the State of Michigan and to enjoin [them] from further prosecuting this existing complaint.

The court's order ultimately provided: "Defendants are hereby ordered to seek withdrawal of the administrative complaint, filed by them, against Plaintiff John Jones only . . . ."

In November 2013, the court took evidence regarding plaintiffs' damages. At that point, three LARA complaints were open against plaintiffs. The court reiterated that defendants had breached the GRC by filing complaints against Outback and Jones, and entered judgment in plaintiffs' favor for $15,618.95. This sum represented the amount that plaintiffs had paid their lawyers for defending against the administrative complaints up to the date of the judgment.

Defendants obeyed the injunction by requesting that their complaints be withdrawn, but LARA persisted. In January 2015, LARA issued a formal complaint against plaintiffs. Ultimately, LARA found that plaintiffs had committed a relatively minor infraction payable by a small fine.

According to plaintiffs, however, defendants' compliance with the injunction had actually been short-lived and half-hearted. In 2015, plaintiffs filed a second lawsuit alleging that defendants had committed various acts of misconduct *after* judgment entered in the 2013 case. Their complaint set forth two varieties of claims: that defendant had violated the 2013 injunction and settlement agreement causing more damages, and that defendants used a separate shill entity, Riek Enterprises, to pursue additional LARA complaints:

17. Unknown to this Honorable Court or Plaintiffs at the time of the 2013 Case, Defendant Roberts held a Durable Power of Attorney over another company that was party to the GRC, being Riek Holdings, LLC ("Riek"), which company also filed . . . two (2) other separate LARA Complaints against Plaintiffs under case numbers 65-12-000028 and 65-12-00028 [sic] . . . .

18. Following the entry of the Court's injunctive orders in the 2013 Case, Plaintiffs continued to accrue and incur ongoing damages caused by Defendants' established breach [of] the GRC in defense of the various LARA complaints against Plaintiffs.

19. Defendants never actively sought the dismissal and/or discontinuation of any of these LARA complaints and Defendants further engaged in conduct intended to instigate further investigative efforts by LARA with regard to Plaintiffs . . . .

20. Following the 2013 Case, Defendants then began to systematically contact Plaintiffs' various investors in Australia in an effort to defame Plaintiffs and maliciously instigate a breach of Plaintiffs' ongoing contracts and business relationships with Plaintiffs' investors. . . .

21. Following the 2013 Case, Defendants also engaged in other similar malicious, reckless, unlawful and tortious conduct against Defendant [sic] in an ongoing campaign to defame, disparage and unlawfully interfere and/or instigate the breach of Plaintiffs' ongoing business contracts and relationships.

22. As a result of all Defendants' actions, Plaintiff has been deprived of the $65,000.00 paid to Defendants under the GRC, plus the value of the other consideration tendered to Defendants, and Plaintiffs have also incurred substantial costs, attorney fees and other damages in defending the false and malicious allegations by Defendants in relation to the LARA complaints.

23. As a result of Defendants' actions following the 2013 Case, Plaintiffs' business and reputations have been substantially damaged and Plaintiffs have lost investors, customers, contracts and business relationships.

24. As a result of Defendants' actions following the 2013 Case, Plaintiffs' existing and ongoing business relationships and expectances have been wrongfully, tortiously and maliciously damaged and interfered with causing disruption and breach of those business relationships.

25. As a result of Defendants' actions following the 2013 Case, Plaintiffs have been wrongfully defamed with false and malicious statements published by Defendants to Plaintiffs' various customers, investors and third parties.[1]

Plaintiffs sought to rescind the GRC and requested an award of damages for breach of that contract, unjust enrichment, fraud and misrepresentation, silent fraud and innocent misrepresentation, tortious interference with business relationships, tortious interference with contracts, injurious falsehood, and business defamation. Plaintiffs noted that defendants' legal liability for breach of the GRC had "already been litigated" in the 2013 suit, "only leaving open the issue of ongoing damages incurred by Plaintiffs following the 2013 Case. . . ." Plaintiffs also sought to permanently enjoin defendants from participating in the LARA investigation and using the existence of the LARA investigation to its advantage with investors.

The judge who handled the 2013 suit had retired and the matter proceeded in front of another jurist. Plaintiffs sought partial summary disposition in their favor on their breach of contract claim. As the issue of liability had been decided in the 2013 suit, plaintiffs contended that the only issue before the court was the amount of damages incurred since the court's last order. Plaintiffs asserted that the court's injunction "failed to mitigate the anticipated future damages" as LARA would not dismiss the complaints against them and defendants continued to engage in conduct intended to damage plaintiffs' reputations. And, plaintiffs emphasized, everyone understood that plaintiffs could incur future damages and that those damages were not covered by the court's judgment. The issue of "ongoing and future damages caused by Defendants' established breach of the GRC were never litigated by the parties or determined by the Court," plaintiffs insisted. Plaintiffs pointed out that the court had refrained from awarding future damages because the court believed that an injunction would effectively foreclose any future harm.

Defendants had "only made a ___bare minimum effort___ to comply with this Court's injunctive order, sending a single e-mail to LARA asking whether [they] could withdraw Defendants' LARA complaints," plaintiffs alleged. (Emphasis in original.) Plaintiffs cited defendants' use of Riek Holdings, an Australian entity controlled by defendant Roberts, to file an additional complaint against plaintiffs and defendants' failure to ever seek withdrawal of that complaint as additional violations of the GRC and the injunction. According to plaintiffs, defendants actually requested that their complaints be consolidated with Riek's. Plaintiffs also relied upon evidence that defendants submitted forged documentation to LARA, increasing their cost of defense.

Defendants responded by noting that plaintiffs had filed a satisfaction of judgment with the court after defendants paid the 2013 judgment. This marked the end of the 2013 proceedings, defendants argued, and barred "any further effort to alter or amend the final judgment."

---

[1] According to the first amended complaint, Riek Holdings, a company controlled by defendant Roberts, filed two LARA complaints against plaintiffs in 2012, but these complaints were "unknown" to plaintiffs during the 2013 litigation.

According to defendants, the satisfaction of judgment served to "extinguish[] . . . the entire claim and not merely portions." Defendants additionally asserted that plaintiffs' breach of contract claim should be dismissed on res judicata grounds, asserting that no new "conduct" had occurred.

In response, plaintiffs submitted the deposition testimony of the lawyer representing them in the LARA matters, who asserted that defendant Roberts had not sought dismissal or discontinuation of the investigations, but instead "engaged in conduct intended to instigate further investigative efforts by LARA with regard to Mr. Jones and Outback Property Management." Plaintiffs also provided the court with documents related to Riek Holdings' pursuit of a separate LARA complaint, and emails sent by Roberts in 2014 informing investors of plaintiffs' LARA woes.

The court summarily dismissed plaintiffs' breach of contract claim on res judicata grounds, finding that plaintiffs were precluded from filing successive lawsuits for continuing damages because the 2015 case involved "the same breach" as had been alleged in the first case.

## II. ANALYSIS

We review a trial court's decision on a motion for summary disposition de novo. *Wayne Co v Wayne Co Retirement Comm*, 267 Mich App 230, 243; 704 NW2d 117 (2005). Summary disposition is appropriate under MCR 2.116(I)(2) "[i]f it appears to the court that the opposing party, rather than the moving party, is entitled to judgment. . . ." MCR 2.116(C)(7) provides for summary dismissal of an action if the suit is barred because of a "prior judgment." In reviewing a motion under MCR 2.116(C)(7), a court must accept "[t]he contents of the complaint . . . as true unless contradicted by documentation submitted by the movant." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). The application of a preclusion doctrine is a question of law that we review de novo. *Minicuci v Scientific Data Mgt, Inc*, 243 Mich App 28, 34; 620 NW2d 657 (2000).

> The doctrine of res judicata is employed to prevent multiple suits litigating the same cause of action. The doctrine bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first. *Sewell v Clean Cut [Mgt], Inc*, 463 Mich 569, 575; 621 NW2d 222 (2001). This Court has taken a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not. *Dart v Dart*, 460 Mich 573, 586; 597 NW2d 82 (1999). [*Adair v State*, 470 Mich 105, 121; 680 NW2d 386 (2003).]

The first two components of res judicata are readily satisfied: the prior action was decided on its merits and both actions involve the same parties or their privies. Thus, whether res judicata bars the 2015 lawsuit depends on whether the matters alleged in the 2015 case were, or could have been, resolved in the 2013 case. Two separate lines of legal analysis persuade us that plaintiffs' 2015 breach of contract claims are not barred.

First, the res judicata doctrine does not apply in an action for damages arising from a *continuing* wrong. The United States Supreme Court explained this principle in *Lawlor v Nat'l Screen Serv Corp*, 349 US 322, 325-326; 75 S Ct 865; 99 L Ed 1122 (1955), an antitrust case involving advertising posters. The district court had ruled that the settlement of the petitioners' first suit, yielding an agreement that the defendant would include petitioners in its distribution network and dismissal of the case with prejudice, barred the second. In the second suit, the petitioners alleged that the prior settlement "was merely a device used by the defendants to perpetuate their conspiracy and monopoly," that other companies had joined in the conspiracy, and that the defendant used other anticompetitive devices to exploit its monopoly, including "slow and erratic deliveries of advertising materials in an effort to destroy plaintiffs' business[.]" *Id*. at 325. The Supreme Court reversed, explaining that although the first lawsuit "precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." *Id*. at 328.

*Lawlor* reinforces that an identity of parties and legal issues are not dispositive of whether res judicata applies. "Rather, the first judgment will preclude a second suit only when it involves the same 'transaction' or connected series of transactions as the earlier suit; that is to say, the second cause of action requires the same evidence to support it and is based on facts that were also present in the first." *Maharaj v BankAmerica Corp*, 128 F3d 94, 97 (CA 2, 1997). As explained by the Sixth Circuit in *Crowe v Leeke*, 550 F2d 184, 187 (CA 6, 1977), "[R]es judicata has very little applicability to a fact situation involving a continuing series of acts, for generally each act gives rise to a new cause of action."

The Restatement 2d, Judgements, incorporates these principles. A final judgment on the merits "extinguishes the plaintiff's claim" including "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Restatement 2d, Judgments, § 24(1), p 196. However, "[w]hat factual grouping constitutes a 'transaction', and what groupings constitute a 'series', are to be determined pragmatically," bearing in mind whether they "are related in time, space, origin, or motivation[.]" Restatement 2d, Judgments, § 24(2), p 196. The Reporter's Comment regarding this subsection supplies relevant guidance:

> Material operative facts occurring after the decision of an action with respect to the same subject matter may in themselves, or taken in conjunction with the antecedent facts, comprise a transaction which may be made the basis of a second action **not** precluded by the first. . . . Where important human values— such as the lawfulness of a continuing personal disability or restraint—are at stake, even a slight change of circumstances may afford a sufficient basis for concluding that a second action may be brought. [*Id*. at 203, cmt c (emphasis added).]

Plaintiffs' allegations that defendants breached the GRC and the 2013 judgment after that judgment had been entered bring this case within the reasoning of *Lawlor*. They presented evidence that the breaches resulted in additional attorney fees and other possible damages. And although the breaches are connected in the sense that they flow from the same contract, plaintiffs should not be precluded from asserting new claims arising from continuing wrongful conduct.

To hold otherwise would be to allow defendants a free pass to ignore their contractual and legal obligations.

We emphasize that our holding rests on the plaintiffs' supported allegations that defendants' committed additional wrongful *acts* after the 2013 case concluded. Under this stream of res judicata analysis, the fact that plaintiffs suffered additional damages, standing alone, does not entitle them to pursue a second claim. Rather, the fact that defendants committed subsequent breaches of the parties' contracts does give rise to a claim. Borrowing by analogy from a nuisance case, "[a] continuing wrong is established by continuing tortious acts, not by continual harmful effects from an original, completed act." *Forest City Enterprises, Inc v Leemon Oil Co*, 228 Mich App 57, 76 n 7; 577 NW2d 150 (1998).[2]

The Restatement provides yet another analysis for our holding that res judicata does not apply in these circumstances:

> For reasons of substantive policy in a case involving a continuing or recurrent wrong, the plaintiff is given an option to sue once for the total harm, both past and prospective, or to sue from time to time for the damages incurred to the date of suit, and chooses the later course. [Restatement 2d, Judgments, § 26(1)(e).]

This exception to general res judicata principles is not absolute in Michigan, however. In tort cases, for example, a plaintiff may only bring a second suit when the defendant continues in his or her tortious *act*, but not where the plaintiff experiences "continual harmful effects from an original, completed act." *Terlecki v Stewart*, 278 Mich App 644, 655; 754 NW2d 899 (2008); *Jackson Co Hog Producers v Consumers Power Co*, 234 Mich App 72, 83; 592 NW2d 112 (1998); *Horvath v Delida*, 213 Mich App 620, 627; 540 NW2d 760 (1995). The current matter, however, is based in contract.

The legal differences between tort and contract damages are at the heart of our respectful disagreement with the dissent. The dissent contends that plaintiffs could and should have "preserved" their ability to recovery contract damages that had not yet accrued when they presented their claim for damages in the 2013 case. Notably, the dissent cites no law in support of this proposition. Nor are we aware of any such requirement. While future damages are typically claimed and recoverable in a tort case, the same is simply not true in a contract action.

---

[2] The dissent contends that plaintiffs' complaint does not allege new conduct. We disagree with this interpretation, but our differences on this point are of no consequence. Defendants sought summary disposition under MCR 2.116(C)(7), which permits the parties to submit documentary evidence supplementing the pleadings. Plaintiffs did just that. The affidavit of their counsel states that defendant Roberts "engaged in conduct intended to instigate *further* investigative efforts by LARA," (emphasis added), and that Riek Holdings pursued a new LARA complaint in 2014. Combined with the balance of the allegations in the complaint, these averments establish that plaintiffs' second lawsuit rests on acts that occurred after the first case resolved.

Nor does the dissent explain how plaintiffs could have made a claim for *contract* damages when no additional breach had yet occurred. A fundamental principle governing contract damages limits those damages to no speculative, foreseeable, proven losses. "The party asserting a breach of contract has the burden of proving its damages with reasonable certainty, and may recover only those damages that are the direct, natural, and proximate result of the breach." *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003). "[D]amages must not be conjectural or speculative in their nature, or dependent upon the chances of business or other contingencies. . . ." *Doe v Henry Ford Health Sys*, 308 Mich App 592, 602; 865 NW2d 915 (2014) (quotation marks and citation omitted). Breach of contract damages need not be precisely established, but "uncertainty as to the fact of the amount of damage caused by the breach of contract is fatal[.]" *Home Ins Co v Commercial & Indus Security Servs, Inc*, 57 Mich App 143, 147; 225 NW2d 716 (1974).

We are baffled by the dissent's contention that plaintiffs should have established a claim for *future* breach of contract damages in the 2013 action, given that defendants were enjoined from the conduct that would have led to such damages, and that plaintiffs had no crystal ball enabling them to (1) predict that defendants would violate the injunction, and (2) foretell the expense that would be necessary to undo any damage defendants caused. Simply put, plaintiffs could not have made a claim for contractual damages before defendants again breached the contract. Because plaintiffs could not have brought such a claim in 2013, res judicata does not bar their 2015 action.

We find instructive *Plaza Investment Co v Abel*, 8 Mich App 19, 22-23; 153 NW2d 379 (1967), in which the plaintiff tenant filed suit against the defendant landlord for failure to repair defects in a warehouse roof after receiving notice of same. This Court noted the special nature of the covenant involved in the dispute: "a covenant to keep [the property] in repair," which "run[s] with the land." *Id*. at 24. Other covenants held by landlords, "such as a covenant to construct improvements or to *put* in repair," involve single acts and therefore "are capable of breach but once." *Id*. at 26. "A covenant to keep in repair throughout the term of the lease," on the other hand, "is capable of constant or continuous breach and, thus, the fact that damages have been recovered for a breach of such a covenant will not bar a second suit seeking damages suffered from the continuing breach since the last discovery." *Id*. at 27.

Here, plaintiffs asked for, and the court granted, injunctive relief to try to mitigate the damages. Like the landlords' initial and failed attempts to repair the roof *Plaza Investment*, which lead to the further accrual of damages, plaintiffs contend that they accrued additional damages when (according to their first amended complaint) defendants refused to abide by the letter and spirit of the GRC by pursuing administrative punishment. Under these circumstances, § 26(1)(e) of the Restatement permitted plaintiffs to file a second lawsuit to redress a continuing harm.

Plaintiffs also direct our attention to *Burroughs v Lake Arrowhead Prop Owners Ass'n*, unpublished per curiam opinion of the Court of Appeals, issued March 16, 2001 (Docket No.

221511).[3]  In *Burroughs*, the plaintiffs paid annual dues to the Association pursuant to a homeowners' association agreement.  The Association was contractually required to use part of those dues to maintain the roadways in the subdivision.  *Id*., slip op at 1.  In 1995, the plaintiffs filed suit alleging that the Association had not maintained Bodrie Lane.  A jury found in the plaintiffs' favor and awarded monetary damages based on the Association's breach of contract.  *Id*.  After the 1995 suit, the Association continued to fail to maintain Bodrie Lane.  Accordingly, in 1997, the plaintiffs filed a second suit.  *Id*., slip op at 2.  In reversing the circuit court's summary dismissal of the plaintiffs' action on res judicata grounds this Court held:

> The doctrine of res judicata is inapplicable to a subsequent action for damages arising out of a continuing breach of a contractual duty affirmed by a verdict in the first action.  To rule otherwise would result in an inability to enforce judgments for damages incurred by a continuing breach of contract. [*Id*.]

Applying the elements of res judicata to the case before it, this Court noted that "however similar the facts concerning defendant's previous failures to maintain the roadway, defendant's subsequent failure to maintain Bodrie Lane . . . created a new set of factual circumstances."  *Id*., slip op at 3.  "[T]he facts" in the two cases "were not identical because subsequent occurrences of defendant's conduct created new claims and a new cause of action."  *Id*.  Moreover, this Court continued, "as a matter of practicality, the issue of damages for future breach of the defendant's duty to maintain could not have been litigated until such breach occurred."  *Id*.  "Where damages are speculative, or their incurrence contingent on the happening of a future event, such a further breach of a continuing duty to maintain, a subsequent suit to recover additional damages is not barred by res judicata or collateral estoppel."  *Id*.

This Court also noted that the facts in *Burroughs* fell within the "exception to the doctrine of res judicata" found in § 26(1)(e) of the Restatement.  This Court indicated that the circuit court in the first action had two choices: "(1) adjudicating damages that had not yet been incurred and that, in its own words, were speculative, or (2) leaving the issue of future breaches, if any, to the determination of a subsequent lawsuit if the parties could not sort out their differences."  *Id*.  The future damages were too speculative to fall within the circuit court's jurisdiction, this Court held.  *Id*.

In the current case, the facts of plaintiffs' second lawsuit are not identical to the facts in the first.  New events allegedly occurred: defendants undertook actions "intended to instigate further investigative efforts by LARA" and LARA declined to withdraw defendants' complaints.  These "subsequent occurrences" were triggered by defendants' actions and led to a new claim for damages arising from defendants' breach of the GRC.

Yet another ground exists for vacating the trial court's res judicata ruling.  The court in the 2013 suit could not award damages that were wholly "contingent on the happening of a

---

[3] We discuss *Burroughs* in detail because although it is unpublished, it clearly and concisely analyzes an issue of law otherwise not frequently addressed in Michigan caselaw.  MCR 7.215(C)(1).

future event"—LARA's decision to continue the investigation instigated by defendants. Such *future* damages were entirely speculative; indeed, it was uncertain whether plaintiffs would incur any future damages at all.

In a breach of contract action, a plaintiff may seek recovery for future damages but only if the damages are "reasonably certain [to] accrue" or "reasonably certain to arise." *Kokkonen v Wausau Homes*, 94 Mich App 603, 613-614; 289 NW2d 382 (1980) (quotation marks and citations omitted). There must also be a " 'tangible basis upon which damages may be assessed.' " *Environair, Inc v Steelcase, Inc*, 190 Mich App 289, 293; 475 NW2d 366 (1991), quoting *Sepanske v Bendix Corp*, 147 Mich App 819, 829; 384 NW2d 54 (1985). In 2013, the parties had no way to know whether LARA would withdraw the complaints upon defendants' request and if not, how long the LARA process would last. The court in the 2013 suit acknowledged on the record that plaintiffs' potential future damages were too uncertain to be calculated—"They haven't monetized the future damages. . . ." "The necessity of proving damages can be avoided if another remedy, such as . . . an injunction, is granted instead of damages." Restatement 2d, Contracts, § 352, cmt c, p 147. In 2013, the circuit court employed injunctive relief to try to "mitigate any potential damages." The injunction did not have the desired effect, despite that defendants complied with its terms. LARA declined to stop its investigation and eventually opened a "formal complaint," but ultimately found plaintiffs liable of a single, relatively minor infraction. In the meantime, plaintiffs amassed significant costs and attorney fees defending against the complaints.

The trial court issued an injunction to try to mitigate the future effects of defendants' contractual breach, but the injunction did not have its intended effect and damages continued to accrue. The circuit court in the 2013 suit was precluded by basic principles of contract damage law from awarding speculative future damages that might or might not arise. Relief could not be granted in the 2013 case because defendants' had not violated the court's order. Defendants' allegedly did so after the 2013 case closed. Those fresh acts created fresh damages.

We vacate the circuit court's order of partial summary disposition and remand for further proceedings. We do not retain jurisdiction.

/s/ Deborah A. Servitto
/s/ Elizabeth L. Gleicher

-10-